**United States Court of Appeals**

**for the**

**Third Circuit**

Case No. 22-3044

MARGARET GOODE, NICOLE MANN, ESTATE OF JESSICA
DEQUITO, THERESA ATWATER and JACQUELINE BALLINGER,

*Appellants*

v.

CAMDEN CITY SCHOOL DISTRICT, PAYMON ROUHANIFARD,
KEITH MILES, HYE-WON GEHRING, GLORIA MARTINEZ-
VEGA, LAURA BOYCE, CAMERON BAYNES and GENEVIEVE
BYRD-ROBINSON,

*Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

No. 1:16-cv-03936

**BRIEF AND APPENDIX ON BEHALF OF APPELLANTS**

**VOLUME I (PAGES A1-A51)**

On the Brief:

Peter Kober, Esq.

Kober Law Firm, LLC

1864 Route 70 East

Cherry Hill, N.J. 08003

(856) 761-5090

# **TABLE OF CONTENTS**

**Page**

**STATEMENTS AND SUMMARIES** ..................................... 1

I.    Subject Matter & Appellate Jurisdiction ........................... 1

II.   Issues Presented for Review ......................................... 1

III.  Related Cases and Proceedings ..................................... 2

IV.   Statement of the Case ................................................. 3

      A. Facts Relevant to the Issues Submitted for Review ....... 3

      B. Procedural History ......................................... 11

      C. Rulings Presented for Review ............................. 12

V.    Summary of Argument ................................................. 14

**ARGUMENT** ................................................................. 14

I.    GOODE, MANN, DEQUITO AND ATWATER SATISFIED
      THE ADVERSE EMPLOYMENT ACTION ELEMENT OF A
      *PRIMA FACIE* CASE OF AGE DISCRIMINATION UNDER
      THE TOTALITY OF THE CIRCUMSTANCES, AND FOR
      THE DISTRICT JUDGE TO HOLD OTHERWISE WAS
      ERROR ................................................................. 14

      i. Statement of the Standard of Review ......................... 15

II.   GOODE SATISFIED THE PRIVATE CITIZEN
      COMMENTING ON A MATTER OF PUBLIC CONCERN
      ELEMENT OF A CAUSE OF ACTION FOR FIRST
      AMENDMENT RETALIATION AGAINST GEHRING, AND
      FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS
      ERROR …………………………………………………….. 18

      i.   Statement of the Standard of Review ……………………. 18

  1.  THE GRANTING OF QUALIFIED IMMUNITY FOR
      GEHRING'S CONDUCT SHOULD NOT OCCUR …………….. 21

III.  GOODE SATISFIED THE WHISTLE-BLOWING ELEMENT
      OF A *PRIMA FACIE* CASE UNDER CEPA AGAINST
      GEHRING, AND FOR THE DISTRICT JUDGE TO HOLD
      OTHERWISE WAS ERROR ……………………………………. 22

      i.   Statement of the Standard of Review ……………………. 22

**CONCLUSION** ………………………………………………………… 28

# TABLE OF AUTHORITIES

**Cases**                                                    **Pages(s)**

*Allen v. Verizon Pennsylvania, Inc.,*
418 F.Supp.2d 617 (M.D. Pa. 2005) ............................................. 17

*Azzaro v. Cty. of Allegheny,* 110 F.3d 968 (3d Cir. 1997) ................. 19

*Battaglia v. United Parcel Serv.,*
214 N.J. 518, 70 A.3d 602 (2013) ..................................... 24, 27, 28

*Chiofalo v. State,* 238 N.J. 527, 213 A.3d 900 (2019) ...................... 25

*De Ritis v. McGarrigle,* 861 F.3d 444 (3d Cir. 2017) .................. 19, 20

*Dougherty v. School Dist. of Philadelphia,*
772 F.3d 979 (3d Cir. 2014) .................................................. 19, 21

*Estate of Roach v. TRW, Inc.,* 164 N.J. 598, 754 A.2d 544 (2000) ... 25, 26

*Hill v. Borough of Kutztown,* 455 F.3d 225 (3d Cir. 2006) ............... 19

*Jones v. Sch. Dist. of Phila.,* 198 F.3d 403 (3d Cir. 1999) ................. 15

*Lucas v. Chicago Transit Authority,* 367 F.3d 714 (7th Cir. 2004) ......... 16

*McGreevy v. Stroup,* 413 F.3d 359 (3d Cir. 2005) ........................... 21

iv

*Munroe v. Central Bucks School District,*
805 F.3d 454 (3d Cir. 2015) ……………………………………….. 20

*Oest v. Illinois Department of Corrections,*
240 F.3d 605 (7th Cir. 2001) …………………………………… 15

*Palermo v. Clinton,* 784 F.Supp.2d 936 (N.D. Ill. 2011) ………………. 16

*Spears v. Missouri Dep't of Corr. & Human Res.,*
210 F.3d 850 (8th Cir. 2000) …………………………………… 16

*Starnes v. Butler Cty. Court of Common Pleas, 50th Judicial Dist.,*
971 F.3d 416 (3d Cir. 2020) ……………………………………….. 21

*Story v. Burns Intern. Security Services,* 390 F.3d 760 (3d Cir. 2004) …. 15

*Wilkie v. Robins,* 551 U.S. 537 (2007) ……………………………….. 21

**Statutes**

N.J.S.A. 2C:30-2 …………………………………………… 24

N.J.S.A. 18A:6-17a(2) ……………………………………… 17

N.J.S.A. 18A:6-17.3a(1) …………………………………….. 17

N.J.S.A. 34:19-3a(1) ……………………………………… 22, 23, 26

N.J.S.A. 34:19-3a(2) ............................................................ 22, 23, 26

N.J.S.A. 34:19-3c(1) ............................................................ 22, 23, 26

N.J.S.A. 34:19-3c(2) ............................................................ 22, 23, 26

N.J.S.A. 34:19-3c(3) ................................................................ 22, 26

N.J.S.A. 52:13D-23(e)(7) ............................................................ 24

**Treatises**

Marvin M. Goldstein & Stanley L. Goodman, *Employment Law*
(N.J. Practice Series Vol. 18), Sec. 5.3 (2005 ed.) ............................ 26

Rosemary Alito, *N.J. Employment Law,* Sec. 2-8 (2017 ed.) ................ 26

vi

## STATEMENTS & SUMMARIES

### I.    SUBJECT MATTER & APPELLATE JURISDICTION

The District Court had subject matter jurisdiction over Goode's 42 U.S.C.

Section 1983 claim pursuant to 28 U.S.C. Section 1331.  Appellate jurisdiction

over the final orders of the District Court is based on 28 U.S.C. Section 1291.  The

appeal is from a final order or judgment on September 29, 2022 (A5) which

disposed of the district court claim in its entirety.  The filing date of the Notice of

Appeal (A1) was October 28, 2022, which establishes the timeliness of this appeal.

### II.    ISSUES PRESENTED FOR REVIEW

**A.** Did the district judge err by holding that Goode, Mann, Dequito and

Atwater's asserted adverse employment actions taken against them

were insufficient to trigger the protections afforded by the New Jersey

Law Against Discrimination? This issue was raised on motion for

summary judgment, objected to in opposition to summary judgment,

and ruled upon in the district judge's Opinion granting summary

judgment in part (A37).

1

**B.** Did the district judge err by holding that Goode's asserted protected private citizen speech did not touch sufficiently upon a matter of public concern so as to be constitutionally protected speech? This issue was raised on motion for summary judgment, objected to in opposition to summary judgment, and ruled upon in the district judge's Opinion granting summary judgment in part (A24-25).

**C.** Did the district judge err by holding that Goode's asserted whistle-blowing activity did not touch sufficiently upon a matter of public concern, and even if it did, was too vague and conclusory to be protected activity under New Jersey CEPA? This issue was raised on motion for summary judgment, objected to in opposition to summary judgment, and ruled upon in the district judge's Opinion granting summary judgment in part (A33). The district judge explained his ruling on this issue in an Opinion denying reconsideration (A50).

## III.  RELATED CASES AND PROCEEDINGS

This case has not been before this court previously. There is no case known with a related issue which is currently pending.

2

## IV.    STATEMENT OF THE CASE

### A. FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW

Margaret Goode, Nicole Mann, Jessica Dequito and Theresa Atwater were tenured teachers employed by the Camden City School District (the District).  In 2012 the New Jersey Legislature passed the Teacher Effectiveness and Accountability for the Children of New Jersey (TEACHNJ) Act, N.J.S.A. 18A:6-117 et seq., which changed the process by which tenured teachers in New Jersey school districts would maintain their tenure.  It did so by requiring district superintendents to forward tenure charges of inefficiency to the Commissioner of Education (a state official) if either of the following occurred in the course of two consecutive school years:

a) the teacher got (from calculating the scores on her performance evaluations done by District personnel during the school year) an annual summative rating of partially effective or worse the first year, and got an annual summative rating of ineffective the next consecutive school year; or

b) the teacher got (from calculating the scores on her performance evaluations done by District personnel during the school year) an annual summative evaluation of partially effective the first year, and got an annual summative rating of partially effective the next consecutive school year, except that

3

upon a finding of exceptional circumstances by the district superintendent,
deferment of the forwarding of tenure charges of inefficiency to the
Commissioner of Education would be permitted pending the next annual
evaluation.

N.J.S.A. 18A:6-17.3a(1) and N.J.S.A. 18A:6-17a(2) (A59-60).

The District's evaluation rubric, introduced in school year 2013-2014,
allowed for four defined annual summative ratings which could be applied to each
tenured teacher: ineffective, partially effective, effective and highly effective
(A60). The cut-off score which determined an annual summative rating of either
effective or partially effective was 2.65 (2.65 or higher was effective or highly
effective; below 2.65 was partially effective or ineffective) (A65-66).

All tenured teachers employed by the District were evaluated pursuant to this
evaluation rubric, periodically during the school year, by District personnel (A60).
Goode, Mann, Dequito and Atwater were employed as tenured teachers at the
Cream School in the District. Gehring was co-principal at the Cream School
during the 2013-2014 school year, and principal at the Cream School during the
2014-2015 school year.

Goode had periodic classroom evaluations by District personnel in the 2013-

4

2014 school year on five occasions, including by Gehring on January 24, 2014 and March 26, 2014. (A66).

Goode disagreed with Gehring's partially effective rating on January 24, 2014 because Gehring did not observe her actually teach the class (A93). In school year 2013-2014, Goode decided to talk to different teachers, both younger and older (A97). She came to learn that the older teachers, but not the younger teachers, were getting bad evaluations, even though they had never received bad evaluations in prior years (A98).

When all her scores on her evaluations were calculated, Goode had an annual summative rating for the 2013-2014 school year of 2.6. Since this score was below 2.65, she was classified as partially effective for the 2013-2014 school year (A67).

On August 21, 2014, Goode filed a Petition of Appeal with the State of New Jersey Department of Education against co-principals Miles and Gehring (A67). The Petition said as to Ms. Gehring she willfully, knowingly, purposefully gave me unfair partially effective and ineffective observations that contain misleading, erroneous, opinionated and untrue facts, and these unfair, opinionated evaluations were biased (A119). Gehring was aware of the charges filed against her by Goode (A89).

Goode had periodic classroom evaluations by District personnel in the 2014-2015 school year on five occasions, including by Gehring on October 15, 2014 and November 19, 2014; by Hope Edwards-Perry on March 12, 2015; and by Christie Whitzell on April 29, 2015 (A67). When all her scores on these evaluations were calculated, Goode had an annual summative rating for the 2014-2015 school year of 2.62. Since this score was below 2.65, Goode was classified as partially effective for the 2014-2015 school year (A67).

After Hope Edwards-Perry arrived at Cream School to take on the job of vice-principal in the middle of school year 2014-2015, she did Goode's fourth evaluation, which was accurate, and spoke to Goode (A96). Hope-Perry told Goode that Gehring had told her to give Goode a bad evaluation, which she hadn't done (A97). As a result of Hope-Perry's honest fourth evaluation of Goode for school year 2014-2015, Goode would have had a summative rating of 2.85 for school year 2014-2015. If she had finished school year 2014-2015 with an annual summative rating of 2.85, Goode would not have faced tenure charges for her performance in school years 2013-2014 and 2014-2015 (A97).

Gehring had told Hope-Perry that she harbored bad feelings towards Goode because of some charges which Goode had filed against Gehring having to do

6

with harassment (A85). After Goode's fourth evaluation, Gehring told Hope-Perry that Goode was going to get a fifth evaluation (A84). At first, Gehring wanted Hope-Perry to do the fifth evaluation of Goode (A84). Hope-Perry told Gehring if she did the fifth evaluation, she would do it honestly (A85). Hope-Perry told Goode that Gehring wanted her to do a bad fifth evaluation of Goode (A101). Gehring arranged for Christie Whitzell to do the fifth evaluation of Goode (A85). Whitzell did an untrue, inaccurate and false fifth evaluation of Goode (A102).

Since she had been rated as partially effective by the District's evaluation rubric for two consecutive school years, Goode was notified that she was being brought up on tenure charges by the District Superintendent on August 21, 2015 (A68). Goode got legal advice that if she contested the tenure charges, she wouldn't get paid for 120 days, she was going to lose since the process was stacked against tenured teachers, and when she lost she would lose her pension and her teacher's certification in New Jersey (A96). Relying on the legal advice not to fight the tenure charges, and feeling she had no choice, (A96), Goode notified the District of her retirement, rather than contest the tenure charges against her, on September 9, 2015 (A68).

7

Mann had periodic classroom evaluations by District personnel in the 2013-2014 school year on three occasions, including by Gehring on December 11, 2013 (A72). When all her scores on these evaluations were calculated, Mann had an annual summative rating for the 2013-2014 school year of 2.19. Since this score was below 2.65, Mann was classified as partially effective for the 2013-2014 school year (A73). Mann had periodic classroom evaluations by District personnel in the 2014-2015 school year on four occasions, including by Gehring on December 15, 2014, and January 22, 2015. When all her scores on these evaluations were calculated, Mann had an annual summative rating for the 2014-2015 school year of 2.58. Since this score was below 2.65, Mann was classified as partially effective for the 2014-2015 school year (A73).

Since she had been rated as partially effective by the District's evaluation rubric for two consecutive school years, Mann was notified that she was being brought up on tenure charges by the District Superintendent on August 21, 2015 (A73). Mann got legal advice that if she lost the challenge to her tenure charges, she would lose her pension and her teacher's certification in New Jersey (A104). Relying on attorney advice, (A104), Mann notified the District of her retirement, rather than contest the tenure charges against her, on October 22, 2015 (A73).

Dequito had periodic classroom evaluations by District personnel in the 2013-2014 school year on four occasions, including by Gehring on March 5, 2014. When all her scores on these evaluations were calculated, Dequito had an annual summative rating for the 2013-2014 school year of 2.6. Since this score was below 2.65, she was deemed partially effective for the 2013-2014 school year (A74). Prior to school year 2013-2014, the administrators had always told her she was a good teacher, she was doing a good job and to keep it up (A108).

Dequito had periodic classroom evaluations by District personnel in the 2014-2015 school year on four occasions, including by Gehring on October 20, 2014 and November 13, 2014. When all her scores on these evaluations were calculated, Dequito had an annual summative rating for the 2014-2015 school year of 2.48. Since this score was below 2.65, Dequito was classified as partially effective for the 2014-2015 school year (A74).

Since she had been rated as partially effective by the District's evaluation rubric for two consecutive school years, Dequito was notified that she was being brought up on tenure charges by the District Superintendent on August 21, 2015 (A74). Dequito got legal advice that she was going to lose her pension if she contested the tenure charges and lost, and it would be better to resign (A110).

9

Relying on that lawyer's advice, (A110), Dequito notified the District of her retirement, rather than contest the tenure charges against her, on September 2, 2015 (A74).

Atwater had periodic classroom evaluations by District personnel in the 2013-2014 school year on a number of occasions.  When all her scores on these evaluations were calculated, Atwater had an annual summative rating for the 2013-2014 school year of 2.39.  Since this score was below 2.65, Atwater was classified as partially effective for the 2013-2014 school year (A71).

Atwater had been asked by an administrator to teach a general education class, rather than a special education class, on three of her four observations in school year 2013-2014, something she was not prepared to do, (A106), since she was a special education teacher (A105).

Atwater had periodic classroom evaluations by District personnel in the 2014-2015 school year on a number of occasions. When all her scores on these evaluations were calculated, Atwater had an annual summative rating for the 2014-2015 school year below 2.65.  Since her score was below 2.65, Atwater was classified as partially effective for the 2014-2015 school year (A72).

Since she had been rated as partially effective by the District's evaluation

rubric for two consecutive school years, Atwater was notified that she was being placed on administrative leave with pay by the District due to issues including her partially effective evaluation scores (A72). After she was put on administrative leave with pay, Camden City School District sent her attorney a letter saying if you don't resign we are going to take your pension from you (A107). Relying on her attorney's advice, (A108), Atwater notified the District of her retirement, rather than contest prospective tenure charges against her, on June 23, 2016 (A72).

## B. PROCEDURAL HISTORY

Goode, Mann, Dequito, Atwater and three others filed a complaint initiating this litigation on June 30, 2016 (A64). The District and the individual District employee defendants filed a motion for summary judgment to dismiss all claims against them on May 1, 2019. The district judge granted the motion of the District in full and the motion of the individual District employee defendants in full against Goode, Mann, Dequito and Atwater in an Opinion (A6) and accompanying Order (A2) of November 22, 2019, while letting stand certain claims against an individual District employee defendant by Pierce. The district judge explained his reasons for his November 22, 2019 decision in part in an Opinion denying

11

reconsideration of January 9, 2020 (A46). Pierce settled and a final order of dismissal was entered on September 29, 2022 (A5).

In light of their election not to appeal certain rulings of the district judge, Goode, Mann, the Estate of Dequito and Atwater now appeal the dismissal with prejudice of their age discrimination claim under the NJLAD against Gehring. Goode appeals the dismissal with prejudice of her First Amendment retaliation claim under Sec. 1983 and similar NJCRA claim against Gehring; and the dismissal with prejudice of her NJCEPA claim against Gehring.

## C. RULINGS PRESENTED FOR REVIEW

    **i.** "Plaintiffs Goode, Mann, Atwater, and Dequito cannot show the needed tangible consequence of their negative performance evaluations. As such, the NJLAD offers them no relief." (A37).

    **ii.** "…. the August 21 Petition fail[s] at step one of the public concern test because [it does] not raise a matter of public concern at all. Rather, [it] merely recite[s] of Goode's personal gripes with the Danielson rubric and the conduct of Miles and Gehring as applied to her. In….the first Petition, Goode asserted that her evaluators were "biased." Although an allegation that the evaluators were biased against her due to her age, race or other protected status may have

12

been sufficient to survive step one, a plain assertion of bias is not. Without more, such an assertion only indicates that the evaluators were biased against Goode personally, which is not a matter of public concern." (A24-25).

iii. "….the whistleblowing inquiry under CEPA is substantially similar to the public concern inquiry under the First Amendment.  Given this similarity, the Court finds that its analysis of Goode and Pierce's claims under the First Amendment applies to their CEPA claims as well.  All of Goode's complaints either did not touch on an issue of public interest or were too vague or conclusory to put Defendants on notice that she was raising issues of age-discrimination or other illegal activity." (A33).  "In its prior Opinion….the Court simply identified and enforced two restrictions on CEPA's protection which that cut across all sections of the statute: (1) that CEPA does not protect wholly private grievances; and (2) that CEPA does not shield 'vague and conclusory complaints (citation omitted). Since *Estate of Roach* did not address either of these restrictions, the case did not hold that they are cabined to Section 3.c(3) claims. Consequently, Plaintiffs' primary argument for reconsideration fails." (A50).

13

**V.    SUMMARY OF ARGUMENT**

The district judge did not consider the law of sister circuit courts of appeal, nor did he account for the totality of the circumstances, when he ruled that unfavorable job performance evaluations were not adverse employment actions.  The district judge did not conduct a particularized examination of each activity for which Goode claimed the protection of the First Amendment, but instead made a superficial characterization of the speech or activity taken as a whole, relying on a 2008 Third Circuit opinion, but failing to consider post-2008 Third Circuit jurisprudence.  The district judge did not correctly interpret a New Jersey Supreme Court decision when he ruled that the matter of public concern requirement for whistle-blowing cuts across all sections of NJCEPA. The district judge did not examine with care and precision Goode's whistle-blowing activity to analyze whether it was more than vague and conclusory.

<u>**ARGUMENT**</u>

**I.    GOODE, MANN, DEQUITO AND ATWATER SATISFIED THE ADVERSE EMPLOYMENT ACTION ELEMENT OF A *PRIMA FACIE* CASE OF AGE DISCRIMINATION UNDER THE TOTALITY OF THE CIRCUMSTACES, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR**

14

### i. STATEMENT OF THE STANDARD OF REVIEW

The standard of review for this issue is plenary.

An adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Story v. Burns Intern. Security Services,* 390 F.3d 760, 764 (3d. Cir. 2004). It must be materially adverse to be actionable. *Oest v. Illinois Department of Corrections,* 240 F. 3d 605, 612 (7th Cir. 2001). Whether or not the elements of a *prima facie* case have been shown depends on the facts of the particular case, and "cannot be established on a one-size-fits-all basis." *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 411 (3d Cir. 1999). Adverse employment actions, in particular, "come in many shapes and sizes." *Oest v. Illinois Department of Corrections, supra,* 240 F.3d at 613. For this reason, when analyzing whether a particular adverse action is material, "it is important to consider the particular factual details of each situation." *Oest v. Illinois Department of Corrections, supra,* 240 F.3d at 613.

Here, the district judge ruled that unfavorable job performance evaluations were not adverse employment actions. However, in doing so, the district judge erred in two respects: he did not consider the law of sister circuit courts of appeal,

15

and he did not account for the totality of the circumstances.

Generally, "[a] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment." *Spears v. Missouri Dep't of Corr. & Human Res.,* 210 F.3d 850, 854 (8th Cir. 2000); *Lucas v. Chicago Transit Authority,* 367 F.3d 714, 731 (7th Cir. 2004) (same). The totality of the circumstances can dictate otherwise, however. An unfavorable performance evaluation may be actionable where the employer subsequently uses the unfavorable evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. *Spears v. Missouri Dep't of Corr. & Human Res., supra,* 210 F.3d at 854. Where there is some tangible job consequence *accompanying* the unfavorable performance evaluation or reprimand, it may rise to the level of a material adverse employment action. *Lucas v. Chicago Transit Authority, supra,* 367 F.3d at 731 (emphasis added).

A tangible job consequence will accompany an unfavorable performance evaluation where the recipient shows that the negative performance evaluation caused an "inevitable consequence." *Palermo v. Clinton,* 784 F.Supp.2d 936, 944 (N.D. Ill. 2011). A negative performance evaluation may rise to the level of a material adverse employment action where "such a rating [is] coupled with

16

evidence that the employer has used it to the plaintiff's detriment." *Allen v. Verizon Pennsylvania, Inc.,* 418 F.Supp.2d 617, 627 (M.D. Pa. 2005).

Here, a series of unfavorable job performance evaluations – in the course of two consecutive school years, which resulted in two consecutive annual summative ratings of partially effective or worse - would, as per N.J.S.A. 18A:6-17.3a(1) and N.J.S.A. 18A:6-17a(2), inevitably result in the filing of tenure charges of inefficiency against the involved tenured teacher (A59-60). The challenge process for tenure charges was stacked against tenured teachers (A96). Tenured teachers who lost their challenges would lose their jobs, pensions and teacher's certification in New Jersey (A96). Under these circumstances, a series of unfavorable job performance evaluations were used as a basis to detrimentally alter the terms or conditions of the recipient's employment.

Goode's circumstances are a special case. As a result of Hope-Perry's honest fourth evaluation of Goode for school year 2014-2015, Goode would have had a summative rating of 2.85 for school year 2014-2015. If she had finished school year 2014-2015 with an annual summative rating of 2.85, since 2.85 was above 2.65, Goode would not have faced tenure charges of inefficiency for her performance in school years 2013-2014 and 2014-2015 (A97). However,

17

subsequently, Gehring told Hope-Perry that Goode was going to get a fifth evaluation for school year 2014-2015 (A84). Hope-Perry told Goode that Gehring wanted her to do a bad fifth evaluation of Goode (A101). Hope-Perry told Gehring she wouldn't do as Gehring wished (A85). Gehring arranged for Christie Whitzell to do the fifth evaluation of Goode (A85). Whitzell did an untrue, inaccurate and false fifth evaluation of Goode (A102). When her score on all five evaluations was calculated, Goode had an annual summative rating for the 2014-2015 school year of 2.62 (A67). Since this score was below 2.65, and Goode was now rated as partially effective for two consecutive years, she was brought up on tenure charges of inefficiency (A68). Under these special circumstances, Gehring's act of bringing in Whitzell to do the bad fifth evaluation which Hope-Perry wouldn't do, was used as a basis to detrimentally alter the terms or conditions of Goode's employment.

II.    **GOODE SATISFIED THE PRIVATE CITIZEN COMMENTING ON A MATTER OF PUBLIC CONCERN ELEMENT OF A CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION AGAINST GEHRING, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR**

   **i. STATEMENT OF THE STANDARD OF REVIEW**

   The standard of review for this issue is plenary.

18

Public employees possess First Amendment protections against employers when speaking as a private citizen and addressing matters of public concern. *Hill v. Borough of Kutztown,* 455 F.3d 225, 241-42 (3d Cir. 2006). "To involve a matter of public concern, speech must relate to a subject of general interest and of value and concern to the public, whether it is a matter of political, social or other concern to the community or a subject of legitimate news interest. By contrast, speech does not involve a matter of public concern when it relates *solely* to mundane employment grievances." *De Ritis v. McGarrigle,* 861 F.3d 444, 455 (3d Cir. 2017) (emphasis added).

Whether a public employee's speech addresses a matter of public concern is determined "by reference to the speech's content, form, and context." *De Ritis v. McGarrigle, supra,* 861 F.3d at 455. The employee's motivation in making the speech is to be considered, "as well as whether it is important to our system of self-government that the expression take place." *De Ritis v. McGarrigle, supra,* 861 F.3d at 455; *see, Dougherty v. School Dist. of Philadelphia,* 772 F.3d 979, 993 (3d Cir. 2014) (speech purporting to expose the malfeasance of a government official was speech addressing a matter of public concern); *Azzaro v. Cty. of Allegheny,* 110 F.3d 968, 978 (3d Cir. 1997) (discrimination is a matter of public concern).

19

In order to determine whether a particular expression involves a matter of public concern, the court must "conduct a particularized examination of each activity for which the protection of the First Amendment is claimed," rather than "make a superficial characterization of the speech or activity taken as a whole." *De Ritis v. McGarrigle, supra,* 861 F.3d at 455. Where discrete units of speech in question which address matters of public concern appear side-by-side with discrete units of speech in question which address personal grievances in a body of expressive work, the court's particularized examination is not foreclosed from concluding that the overall body of work addresses a matter of public concern. *See, e.g., Munroe v. Central Bucks School District,* 805 F.3d 454, 470 (3d Cir. 2015) (employee's blog posts satisfied the public concern requirement where, "there were, at the very least, occasional blog posts that touched on broader issues like academic integrity, honor, and the importance of hard work").

Here, the district judge erred by making a superficial characterization of the speech or activity taken as a whole, rather than conducting a particularized examination of each activity for which the protection of the First Amendment was claimed. In her Petition of Appeal filed with the State of New Jersey Department of Education on August 21, 2014 against Miles and Gehring, Goode said as to Gehring she willfully, knowingly, purposefully gave me unfair partially effective

and ineffective observations that contain misleading, erroneous, opinionated and untrue facts, and the observations were biased. (A119). Biased means that the aggrieved employee was discriminated against. A particularized examination of the activity, particularly discrimination, reveals a subject of general interest and of value and concern to the public. That the subject of general interest and of value and concern to the public, is a small piece of the expressive work taken as a whole, is of no moment to the matter of public concern analysis.

## 1. THE GRANTING OF QUALIFIED IMMUNITY FOR GEHRING'S CONDUCT SHOULD NOT OCCUR

The district judge did not reach the application of qualified immunity to Gehring's conduct, but the granting of qualified immunity for Gehring's conduct should not occur.

Indeed, the right of public employees who speak as private citizens on matters of public concern to not be retaliated against is clearly established. *Starnes v. Butler Cty. Court of Common Pleas, 50th Judicial Dist.,* 971 F.3d 416, 429 (3d Cir. 2020) (citing *Wilkie v. Robins,* 551 U.S. 537, 555 (2007)); *Dougherty v. School Dist. of Philadelphia, supra,* 772 F.3d at 993 (same); *McGreevy v. Stroup,* 413 F.3d 359, 367 (3d Cir. 2005) (same). This authority is sufficient to deny Gehring qualified immunity for her conduct.

21

**III.    GOODE SATISFIED THE WHISTLE-BLOWING ELEMENT OF A**
**        *PRIMA FACIE* CASE UNDER CEPA AGAINST GEHRING, AND**
**        FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS**
**        ERROR**

### i.    STATEMENT OF THE STANDARD OF REVIEW

The standard of review for this issue is plenary.

In order for a plaintiff to establish a violation of the anti-retaliation provision

of CEPA, she must establish the elements of a *prima facie* case, which include that

she performed a whistle-blowing activity described in N.J.S.A. 34:19-3a or

N.J.S.A. 34:19-3c; "the CEPA defines whistleblowing activity to include

'disclos[ing] or threaten[ing] to disclose to a supervisor or to a public body an

activity, policy or practice of the employer….that the employee reasonably

believes is in violation of a law, or a rule or regulation promulgated pursuant to

law [N.J.S.A 34:19-3a(1)]….[or] is fraudulent or criminal [N.J.S.A. 34:19-3a(2)].'

N.J.S.A. 34:19-3a.  The definition also encompasses '[o]bject[ing] to, or refus[ing]

to participate in any activity, policy or practice which the employee reasonably

believes [ ] is in violation of a law, or a rule or regulation promulgated pursuant to

law [N.J.S.A. 34:19-3c(1)]….is fraudulent or criminal [N.J.S.A. 34:19-

3c(2)]….[or] is incompatible with a clear mandate of public policy concerning the

public health, safety or welfare or protection of the environment [N.J.S.A. 34:19-

3c(3)].' N.J.S.A. 34:19-3c." (A32).

Gehring contends that Goode did not engage in whistle-blowing within the meaning of any of the sections of N.J.S.A. 34:19-3a or N.J.S.A 34:19-3c. Goode asserts she did.

Here, the district judge ruled that Goode did not engage in whistle-blowing. However, in doing so the district judge erred in two respects: he incorrectly applied the law to N.J.S.A. 34:19-3a(1), N.J.S.A. 34:19-3a(2), N.J.S.A. 34:19-3c(1) and N.J.S.A. 34:19-3c(2) whistle-blowing by holding that these sections do "not protect wholly private grievances," (A50) and adding the requirement that these sections must involve a matter of public concern (A33); and he failed to conduct a careful and precise identification of Goode's whistle-blowing activity against Gehring to analyze if it was more than vague and conclusory (A33).

Here, Goode complained about practices of Gehring which she reasonably believed were fraudulent or criminal, or illegal. Therefore, the statutory sections under which she asserts whistle-blowing are N.J.S.A. 34:19-3a(2) and N.J.S.A. 34:19-3c(2), and also N.J.S.A. 34:19-3a(1) and N.J.S.A. 34:19-3c(1). As far as her claims under N.J.S.A. 34:19-3a(2) and N.J.S.A. 34:19-3c(2) may involve a reasonable belief that criminal activity was occurring, official misconduct is

criminal activity under New Jersey law. N.J.S.A. 2C: 30-2. As far as her claims

under N.J.S.A. 34:19-3a(1) and N.J.S.A. 34:19-3c(1) may involve a reasonable

belief that illegal acts were occurring, acts violative of the public trust by a State

employee are proscribed under New Jersey law. N.J.S.A.52:13D-23(e)(7); acts

which are discriminatory are proscribed by the New Jersey Law Against

Discrimination.

"A CEPA claim that is based on fraud [or criminal activity] [citations

omitted], can rest on allegations about the activities of a co-employee [citation

omitted]. The focus is on whether the employee making the complaint reasonably

believed that the activity was occurring and that it amounted to fraud [or criminal

activity] [citations omitted]. The issue is not whether in fact other employees were

engaged in the activity complained of or whether the activity met the legal

definition of fraud. Instead, the question is whether the complaining employee had

a reasonable belief that the activity was fraudulent [or criminal] and complained

about it for that reason [citations omitted]." *Battaglia v. United Parcel Serv.*, 214

N.J. 518, 70 A.3d 602, 626 (2013) (omitting any additional requirement that a

CEPA claim that is based on fraud or criminal activity must also involve a matter

of public concern; nor specifying that CEPA "does not protect wholly private

grievances" when the claim is based on fraud or criminal activity); *see, Chiofalo v.*

*State,* 238 N.J. 527, 213 A.3d 900, 909-911 (2019) (discussing CEPA claim based on fraud or criminal activity and omitting any additional requirement that a CEPA claim that is based on fraud or criminal activity must also involve a matter of public concern; nor specifying that CEPA "does not protect wholly private grievances" when the claim is bases on fraud or criminal activity).

The lack of recent authority on point from the Supreme Court forces a federal appeals court to look to older cases from the Supreme Court for guidance. Fortunately, a case more than twenty years old from the Supreme Court supplies guidance, *Estate of Roach v. TRW, Inc.,* 164 N.J. 598, 754 A.2d 544 (2000).

In *Estate of Roach,* the Appellate Division of the Superior Court set aside a jury verdict for plaintiff, on the grounds that CEPA did not extend protection to employees' complaints about co-employees' actions, brought under N.J.S.A. 34:19-3a, N.J.S.A. 34:19-3c(1) and N.J.S.A. 34:19-3c(2), absent some showing that those co-employees' actions "*implicate[d] the public interest." Estate of Roach v. TRW, Inc., supra,* 164 N.J. 598, 754 A.2d at 549 (emphasis added).  The Supreme Court said "[i]n essence, the Appellate Division held that *all* CEPA violations require a specific showing that the complained-about activities *implicate the public interest*," but it disagreed. *Estate of Roach v. TRW, Inc., supra,* 164 N.J.

598, 754 A.2d at 549 (emphasis added). Therefore, *Estate of Roach* squarely held that CEPA claims based on fraud, criminal activity, or illegal acts need not involve activity which implicate the public interest.  This square holding in itself is dispositive of the issue brought on this appeal.

The Court explained, "[t]hus, we would pervert the legislative intent if we required employees to prove the [N.J.S.A. 34:19-3c(3)] *elements*, or to establish some other violation of 'public policy,' when asserting claims under the other sections of the statute [N.J.S.A. 34:19-3a(1), N.J.S.A. 34:19-3c(1), N.J.S.A. 34:19-3a(2) and N.J.S.A. 34:19-3c(2)]. *Estate of Roach v. TRW, Inc., supra,* 164 N.J. 598, 754 A.2d at 551 (emphasis added); *accord,* Rosemary Alito, *N.J. Employment Law,* Sec. 2-8, at 91 (2017 ed.) ("Employees asserting claims under Sections 3a, 3c(1) and 3c(2) need not make a separate showing of a public interest"); Marvin M. Goldstein & Stanley L. Goodman, *Employment Law* (N.J. Practice Series Vol. 18), Sec. 5.3, at 204 n. 4 (2005 ed.) ("*See Estate of Roach v. TRW, Inc.,* 164 N.J. 598, 614, 754 A.2d 544, 553 (2000) (additional proof that co-employee's unethical or illegal conduct implicated the public interest is unnecessary to prove a cause of action under CEPA section 3a)").

Thus, it has been clearly established under New Jersey law for more than

26

twenty years that a plaintiff making claims under one or more of the other sections of CEPA, rather than making a claim under the 'public policy' provision, N.J.S.A. 34:19-3c(3), need not show that his or her reasonable belief leading to whistle-blowing involved a matter of public concern and such a claim may be a wholly private grievance. The district judge erred by interpreting the law otherwise.

The other ground upon which the district judge struck down Goode's CEPA whistleblowing was that it was vague and conclusory. The Supreme Court has informed that "[v]ague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness are not the sort of things that the Legislature intended to be protected by CEPA," but the Court's "guiding principles demonstrate that it is critical to identify the evidence that an aggrieved employee believes will support the CEPA recovery with care and precision." *Battaglia v. United Parcel Serv., supra,* 214 N.J. 518, 70 A.3d at 627.

Here, the district judge failed to conduct a careful and precise identification of the whistle-blowing activity to analyze if it was more than vague and conclusory. *Battaglia* involved an employee's anonymous letter to HR alleging there were "so many examples [of] poor and unacceptable, unethical behavior" by managers, which he contended was sufficient to put defendant on notice that he was trying to

27

blow the whistle about improper use of the UPS credit card by these managers. *Battaglia v. United Parcel Serv., supra,* 214 N.J. 518, 70 A.3d at 610. In contrast, Goode, in her Petition of Appeal of August 21, 2014 against Miles and Gehring, said as to Gehring she willfully, knowingly, purposefully gave me unfair partially effective and ineffective observations that contain misleading, erroneous, opinionated and untrue facts, and the observations were biased. (A119). Biased means that the aggrieved employee was discriminated against. A careful and precise identification of Goode's activity reveals that it was whistle-blowing about something in particular, rather than a vague and conclusory accusation.

### CONCLUSION

Grounds have been shown for reversal of the district judge on all issues.

Respectfully submitted,

s/ Peter Kober
Peter Kober, Esq.
Attorney Identification Number 006481979
Kober Law Firm, LLC
1864 Route 70 East, Cherry Hill, NJ 08003
856-761-5090

DATED: February 6, 2023

## COMBINED CERTIFICATIONS

I, Peter Kober, Esq., certify as follows:

1. I am a member of the bar of the United States Court of Appeals for the Third Circuit.

2. This brief complies with the page limitation required by Fed. R. App. P. 32(a)(7)(A).

3. The text of the electronic brief is identical to the text in the paper copies.

4. A virus check has been run on the file and no virus was detected. The version of the virus protection program used was SecurityEdge.

5. This brief and appendix were served on Walter Kawalec, Esq., of the firm of Marshall, Dennehey, Warner, Coleman & Goggin, wfkawalec@mdwcg.com, via electronic filing by the Notice of Docket Activity on or before February 6, 2023. Mr. Kawalec is known by the undersigned to be a Filing User.

6. Pursuant to 28 U.S.C. Section 1746, I certify under penalty of perjury that the foregoing is true and correct.

s/Peter Kober

Peter Kober, Esq.

DATED: February 6, 2023