No. 22-3044

# In the United States Court of Appeals for the Third Circuit

MARGARET GOODE, NICOLE MANN, DOLORES EVERETTE, JESSICA DEQUITO, THERESA ATWATER, JACQUELINE BALLINGER, and RENA PIERCE,

*Plaintiffs/Appellants*

*v.*

CAMDEN CITY SCHOOL DISTRICT, PAYMON ROUHANIFARD, KEITH MILES, HYE-WON GEHRING, GLORIA MARTINEZ-VEGA, LAURA BOYCE, CAMERON BAYNES, AND GENEVIEVE BYRD-ROBINSON,

*Defendants/Appellees.*

Appeal from the Order of the United States District Court for the District of New Jersey by the Honorable Robert B. Kugler, U.S.D.J., in Civil Action No. 1:16-cv-03936-RBK-JS

**Brief of Defendants, Camden City School District, Paymon Rouhanifard, Keith Miles, Hye-Won Gehring, Gloria Martinez-Vega, Laura Boyce, Cameron Baynes, and Genevieve Byrd-Robinson**

Walter F. Kawalec, III, Esquire
**Marshall, Dennehey, Warner, Coleman & Goggin**
15000 Midlantic Drive
Suite 200, P.O. Box 5429
Mt. Laurel, NJ 08054
(856) 414-6000
wfkawalec@mdwcg.com
*Attorneys for Appellee, Camden City School District, Paymon Rouhanifard, Keith Miles, Hye-Won Gehring, Gloria Martinez-Vega, Laura Boyce, Cameron Baynes, and Genevieve Byrd-Robinson*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

I.   COUNTER STATEMENT OF THE CASE ....................................... 1

  A. Background ........................................................................... 1

  B. Margaret Goode ..................................................................... 3

  C. Theresa Atwater .................................................................... 7

  D. Nicole Mann .......................................................................... 8

  E. Jessica Dequito ...................................................................... 9

  F. Disposition of Claims. ........................................................... 10

II.  SUMMARY OF THE ARGUMENT ........................................... 11

III. ARGUMENT .......................................................................... 13

  A. Judge Kugler Properly Dismissed The Counts Under The LAD for Age Discrimination, As Plaintiffs Failed To Demonstrate An Adverse Employment Action. ................................................................................ 13

    Plaintiffs Did Not Suffer an Adverse Employment Action ............................ 16

  B. Judge Kugler Properly Dismissed Plaintiff Goode's Claim For First Amendment Retaliation Because She Did Not Assert a Claim for a Matter of Public Concern. ........................................................................... 22

    Gehring is Entitled to Qualified Immunity ................................................. 26

  C. Judge Kugler Properly Dismissed Plaintiff Goode's CEPA Claim for Failure to Properly Plead an Act of Whistleblowing. ..................................... 28

    Goode's CEPA Claim is Without Merit ........................................................ 28

IV.  CONCLUSION ..................................................................... 33

V.   CERTIFICATION OF BAR MEMBERSHIP ................................ v

VI.  CERTIFICATE OF COMPLIANCE  WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, TYPE STYLE, AND ELECTRONIC FILING REQUIREMENTS ................................................ vi

CERTIFICATE OF SERVICE ............................................................ vii

# **TABLE OF AUTHORITIES**

**Cases**

Abrams v. Lightolier Inc., 50 F.3d 1204 (3d Cir. 1995)..........................................15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................................... 14, 15

Battaglia v. United Parcel Service, Inc., 70 A.3d 602 (N.J. 2013)............. 29, 30, 32

Beasely v. Passaic Cty., 873 A.2d 673 (N.J. Sup. Ct. App. Div. 2005) ..................29

Berg v. Cty. Allegheny, 219 F.3d 261 (3d Cir. 2000) ...........................................26

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ......................................................14

Chiofalo v. State, 213 A.3d 900 (N.J. 2019) ................................................... 30, 32

City of Escondido, Cal. v. Emmons, ___ U.S. ___, 202 L. Ed. 2d 455 (2019).......27

Clowes v. Terminix Int'l, Inc., 538 A.2d 794 (N.J. 1988) ......................................15

Connick v. Myers, 461 U.S. 138 (1983)......................................................... 23, 24

Denkins v. State Operated Sch. Dist. of the City of Camden, No. 1:16-cv-00653-JBS-AMD, 2016 WL 6683541, at *8 (D.N.J. Nov. 14, 2016), aff'd, 715 F. App'x 121 (3d Cir. 2017)......................................................................... 19, 20, 21

Dougherty v. Sch. Dist., 772 F.3d 979 (3d Cir. 2014)............................................23

Dzwonar v. McDevitt, 828 A.2d 893 (N.J. 2003) ..................................................28

Estate of Roach v. TRW, Inc., 754 A.2d 544 (N.J. 2000) ................................ 30, 31

Fioriglio v. City of Atlantic City, 995 F. Supp. 379 (D.N.J. 1993), aff'd 185 F.3d 861 (3d Cir. 1999)................................................................................................28

Foster v. Ashcroft, No. 05-1734, 2006 WL 1995305 (D.N.J. 2006)......................16

Garcetti v. Ceballos, 547 U.S. 410 (2006)............................................................23

Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009) ...................................................23

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ...........................................................26

Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323 (3d Cir. 2015)..................16

Maw v. Advanced Clinical Comm., Inc., 846 A.2d 604 (N.J. 2004) ......................29

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ....................................15

Mehlman v. Mobil Oil Corp., 707 A.2d 1000 (N.J. 1998) .....................................29

Mitchell v. Forsythe, 472 U.S. 511 (1985) ...............................................26

Mullenix v. Luna, 577 U.S. 7 (2015)........................................................27

Saucier v. Katz, 533 U.S. 194 (2001) .......................................................26

Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 611 (N.J. 2002) .................17

Smart v. Ball State Univ., 89 F.3d 437 (7th Cir. 1996) ...........................16

Startzell v. City of Phila., 533 F.3d 183 (3d Cir. 2008)...........................14

Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engingeers, AFL-CIO, 982 F.2d 883 (3d Cir. 1992)...........................................................15

United States v. Maury, 695 F.3d 227 (3d Cir. 2012) ..............................17

Zive v. Stanley Roberts, Inc., 867 A.2d 1133 (N.J. 2005) .............. 15, 16

## Statutes

29 U.S.C. § 621 *et seq.* (Age Discrimination in Employment Act ,"ADEA")....2, 11

42 U.S.C. § 1983 ................................................................. 11, 20

N.J.S.A. 10:5-12, (New Jersey Law Against Discrimination, "LAD"). 2, 11, 12, 13, 15, 17, 22

N.J.S.A. 10:6-2 (New Jersey Civil Rights Act, "CRA") ....................................2, 11

N.J.S.A. 18A:6-117 *et seq.* (Teacher Effectiveness and Accountability for the Children of New Jersey Act "TEACHNJ") ...................................................... 2, 3, 5

N.J.S.A. 18A:7A-49(e) (Quality Single Accountability Continuum Act, "QSAC") 1

N.J.S.A. 34:19-3................................................................. 28, 30, 31

## Court Rules

Fed. R. App. P. 32 (a)(7)(B) .................................................................. vi

Fed. R. App. P. 32(a)(6)........................................................................ vi

Fed. R. App. P. 32(a)(7)(B)(iii) ............................................................ vi

Fed. R. Civ. P. 56 ........................................................................ 14, 15

Third Circuit LAR 31(b) & (c) .............................................................. vi

Third Circuit LAR 46.1(e) .....................................................................v

## Constitutional Provisions

U.S. Const., Amend. I ........................................ 2, 11, 12, 13, 22, 23, 24, 26, 29, 31

## I.  COUNTER STATEMENT OF THE CASE

### A. BACKGROUND

Plaintiffs are former tenured teachers who were employed by the Camden City School District.  On June 30, 2016, they filed suit alleging age-discrimination arising out of the conclusion of their employment with the District.  [ECF No. 1]. Plaintiffs claim that the District implemented a new teacher evaluation rubric, the Danielson Rubric,[1] and that by allegedly issuing "false, undeserved, and unwarranted" evaluations or scores to Plaintiffs, it used the new rubric as a "pretext to pressure teachers with tenure who were over the age of forty to retire from the district."  [ECF No. 61, ¶¶35-36]

As of June 23, 2013, the New Jersey Board of Education took over the operation of the Camden City Board of Education by way of a consent decree, pursuant to the Quality Single Accountability Continuum Act ("QSAC"), N.J.S.A. 18A:7A-49(e), effective June 23, 2013.  Plaintiffs allege that Paymon Rouhanifard, the former state-appointed Superintendent of Schools, created a policy to use the Danielson Rubric to pressure tenured teachers over the age of 40 to retire from the District.  [Id., at ¶¶35-36].  Plaintiffs further allege that Superintendent

---

[1] The Danielson Rubric is based on the Danielson Framework for Teaching, developed by educator Charlotte Danielson as a tool to identify the aspects of a teacher's responsibilities that have been documented through research as promoting improved student learning.

Rouhanifard instructed certain school administrators or lead educators—Keith Miles, Hye-won Gehring, Gloria Martinez-Vega, Laura Boyce, Cameron Baynes, and Genevieve Byrd-Robinson—to implement that policy.  [Id. at 43, 45-48]. Plaintiffs allege that as a result of poor grading under the Danielson Rubric they faced tenure charges, and were forced to retire or resign.

Plaintiff named the District, Rouhanifard, Miles, Gehring, Martinez-Vega, Boyce, Baynes, and Byrd-Robinson as defendants and asserted claims under the Age Discrimination in Employment Act ("ADEA"), First Amendment of the U.S. Constitution, New Jersey Civil Rights Act ("CRA"), New Jersey Law Against Discrimination ("LAD"), New Jersey Conscientious Employee Protection Act ("CEPA"), and fundamental fairness doctrine.

The District adopted the Danielson Rubric pursuant to the Teacher Effectiveness and Accountability for the Children of New Jersey ("TEACHNJ") Act, N.J.S.A. 18A:6-117 *et seq.*, and with the approval of the Commissioner of Education.  [Id. at ¶¶31-32].  Under the Danielson Rubric, teachers of all subject areas and all age groups—including those under the age of 40—have received summative scores below 2.65 ("effective") or were placed on a Corrective Action Plan.

### B. MARGARET GOODE

Plaintiff Margaret Goode ("Goode") is 68-years old and was employed as a science teacher with tenure at the R.T. Cream Family School ("Cream School") in the District. [ECF No. 61 at ¶16]. Miles and Gehring served as co-principals at the Cream School during the 2013-2014 school year. [Id., at ¶¶25-26]. Gehring served as the principal at the Cream School during the 2014-2015 school year. [Id., at ¶26]. Pursuant to Plaintiffs' Stipulation of Dismissal, Goode's claims against Miles as they relate to Miles' conduct at the Cream School have been dismissed with prejudice. [ECF No. 94, 108]

Goode was advised by her union and understood the new tenure law under the TEACHNJ, which required the filing of the tenure charges. [ECF No. 95-5, at 66:15-67:5]. Prior to being evaluated under the Danielson Rubric, Goode received notice and training regarding the new evaluation rubric through numerous workshops and faculty meetings. [ECF No. 95-5 at 144:16-145:20].

Plaintiffs allege that during the 2013-2014 school year, Goode was evaluated on numerous occasions: (1) Keith Miles evaluated her on November 4 & 12, 2013; (2) Hye-Won Gehring evaluated her on January 24, 2014; (3) Nikia Witaker evaluated her on March 10, 2014; (4) Brita Threadford-Woodard evaluated her on March 24, 2014; and (5) Hye-Won Gehring evaluated her on March 26, 2014. [ECF No. 61 at ¶57].

3

As a result of the evaluations, Plaintiff received a summative evaluation score for the 2013-2014 school year of 2.6, which is classified as "partially effective." [ECF No. 61 at ¶75].  Therefore, pursuant to The Act, Plaintiff was placed on a Corrective Action Plan ("CAP") for the 2014-2015 school year. [ECF No. 61 at ¶75].

On or about August 21, 2014, Goode filed a petition of appeal with the Department of Education, alleging that Miles and Gehring acted inappropriately with respect to her teacher evaluations for the 2013-2014 school year.  [ECF No. 95-5, at 83:20-84:3, 85:4-11; Appx. 111-119]  In that petition challenging her evaluations for the 2013-2014 school year, Goode made no reference to age-based misconduct by Miles and Gehring.  [Appx. 111-119]

During the 2014-2015 school year, Goode was evaluated on five (5) occasions: (1) Natalie Goode evaluated her on September 12, 2014; (2) Hye-Won Gehring evaluated her on October 15, 2014; (3) Hye-Won Gehring evaluated her on November 19, 2014; (4) Hope Edwards-Perry evaluated her on March 12, 2015; and (5) Christie Whitzell evaluated her on April 29, 2015. [ECF No. 61 at ¶78].

As a result of the evaluations, Plaintiff Goode received a summative evaluation score for the 2014-2015 school year of 2.62, which is classified as "partially effective." [ECF No. 61 at ¶103].

4

On or about July 17, 2015, Goode sent Rouhanifard a letter enclosing her rebuttals to the evaluations with which she disagreed, requesting a new Corrective Action Plan ("CAP") for the 2015-2016 school year. [ECF No. 95-5 at 121:23-123:12]. In the July 17, 2015 letter to Rouhanifard, no reference is made to any age-related mistreatment and/or discrimination by Goode. [ECF No. 95-9] Rather, Goode expressed her disagreement with the evaluations and her belief that Miles and/or Gehring simply did not like her. [Id.]

On or about August 21, 2015, Goode received correspondence from Rouhanifard, enclosing the tenure charges based on Goode's "partially effective" rating on her evaluations for consecutive years (2013-2014 and 2014-2015 school years) pursuant to the TEACHNJ Act. [ECF No. 95-5, at 53:4-55:1, 59:9-19] However, Goode chose not to participate in any proceeding or hearing regarding the tenure charges against her. [ECF No. 95-5, at 59:6-8]. Instead, on September 9, 2015, Goode hand-delivered a letter addressed to Rouhanifard, announcing her retirement, in lieu of contesting the tenure charges. [ECF No. 95-5, at 108:16-21; 109:24-110:20; ECF No. 95-6, at 34].

In her September 2015 letter, Goode complains of the low evaluation scores she received during the 2013-2014 and 2014-2015 school years; however, no reference is made to age-related mistreatment or discrimination by Miles, Gehring,

or anyone associated with the District.  [ECF No. 95-5, at 109:24-110:20; ECF No. 95-6, at 34].

With regard to the allegation that Miles made age-related harassment or remarks by Miles, Goode cannot identify any mistreatment other than Miles coming into her classroom to observe her class frequently and regarding her Student Growth Objectives ("SGO").  [ECF No. 95-7, at 234:12-235:18].  Goode also expressed her belief that Miles mistreated her based on her age because he appeared friendlier with younger staff.  [ECF No. 95-5, at 191:16-192:10].

With regard to the alleged age-related harassment or remarks by Gehring, Goode cannot identify any specific remarks that Gehring made other than a comment regarding her "teacher's energy" being "neutral."  [ECF No. 95-7 at 248:7-250:22].  Goode further testified that she was advised by Hope Edwards-Perry—former vice principal at the Cream School—that Gehring instructed her to give certain teachers in the building bad evaluations in the presence of other teachers; however, Goode admitted that age was not the reason for the alleged instruction by Gehring.  [ECF No. 95-7 at 226:12-228:5].  However, Ms. Edwards-Perry, who is not a party to this litigation, testified at her deposition that she did not make such a comment nor does she recall ever receiving such an instruction from Gehring.  [ECF No. 95-10 at 49:10-50:4].

### C. THERESA ATWATER

Theresa Atwater was employed with the Camden City School District at the R.T. Cream Family School as a special education teacher. [ECF No. 61 at ¶20]. Her date of birth is May 21, 1960. [ECF No. 61 at ¶20]. During the 2013-2014 school year, Ms. Atwater was evaluated under the Danielson Rubric. [ECF No. 61 at ¶207]. Ms. Atwater's summative score for the 2013-2014 school year evaluations was a 2.39, which is classified as "partially effective." [ECF No. 61 at ¶211].

As a result of the "partially effective" summative score, Ms. Atwater was placed on a Corrective Action Plan ("CAP") for the 2014-2015 school year. [ECF No. 61 at ¶211]. During the 2014-2015 school year, Ms. Atwater was evaluated again under the Danielson Rubric. [ECF No. 61 at ¶212]. Ms. Atwater's summative score for the 2014-2015 school year was again classified as "partially effective." [ECF No. 61 at ¶213].

On August 31, 2015 Ms. Atwater was notified that she was being placed on administrative leave with pay due to issues including, but not limited to, her evaluation scores. [ECF No. 61 at ¶218]. On June 23, 2016 Ms. Atwater resigned from her employment before even receiving tenure charges. [ECF No. 61 at ¶219 and [ECF No. 95-20 at 129:5-11].

### D. NICOLE MANN

Nicole Mann was employed with the Camden City School District at the R.T. Cream Family School from approximately April 2003 to October 22, 2015 [ECF No. 61 at ¶17; ECF No. 95-22 at 32:19-21]. Her date of birth is June 20, 1975. [ECF No. 61 at ¶17].

During the 2013-2014 school year Ms. Mann was evaluated under the Danielson Rubric on three occasions: (1) Hye- Won Gehring evaluated her on December 11, 2013; (2) Defendant Keith Miles evaluated her on January 17, 2014; and (3) Albert Wagner evaluated her on March 6, 2014. [ECF No. 61 at ¶118]. Ms. Mann's summative score for the 2013-2014 school year evaluations was a 2.19, which is classified as "partially effective." [Doc.61 at ¶126].

As a result of the "partially effective" summative score, Ms. Mann received a Corrective Action Plan ("CAP") for the 2014-2015 school year. [ECF No. 61 at ¶126]. During the 2014-2015 school year, Ms. Mann was evaluated under the Danielson Rubric on four occasions: (1) Natalie Goode evaluated her on September 15, 2014; (2) Hye-Won Gehring evaluated her on December 15, 2014; (3) Hye-Won Gehring evaluated her on January 22, 2015; and (4) Hope Edwards-Perry evaluated her on March 21, 2015. [ECF No. 61 at ¶126]. Ms. Mann's summative score for the 2014-2015 school year evaluations was a 2.58, which is classified as "partially effective." [ECF No. 61 at ¶135].

On August 21, 2015, Mann was notified by the State District Superintendent that she was being brought up on tenure charges of inefficiency and that effectively immediately she was suspended with pay. [ECF No. 61 at ¶138]  On October 22, 2015, Plaintiff resigned from her employment and did not contest the tenure charges. [ECF No. 61 at ¶139].

### E. JESSICA DEQUITO

Jessica DeQuito was employed with the Camden City School District, at the R.T. Cream Family School, as a special education teacher. [ECF No. 61 at ¶19]. Her date of birth is July 16, 1954 [ECF No. 61 at ¶19].

During the 2013-2014 school year, Ms. DeQuito was evaluated under the Danielson Rubric on four occasions: (1) Brita Threadford-Woodard evaluated her on November 21, 2013; (2) Keith Miles evaluated her on January 8, 2014; (3) Hye-Won Gehring evaluated her on March 5, 2014; and (4) Keith Miles evaluated her on April 14, 2014.  [ECF No. 61 at ¶174].

Ms. DeQuito's summative score for the 2013-2014 school year evaluations was a 2.6, which is classified as "partially effective." [ECF No. 61 at ¶185].  As a result of the "partially effective" summative score, Ms. DeQuito was placed on a Corrective Action Plan ("CAP") for the 2014-2015 school year. [ECF No. 61 at ¶185].

During the 2014-2015 school year, Ms. DeQuito was evaluated on four occasions: (1) Natalie Goode evaluated her on September 12, 2014; (2) Hye-Won Gehring evaluated her on October 20, 2014; (3) Hye-Won Gehring evaluated her on November 13, 2014; and (4) Jill Trainor evaluated her on February 2, 2015. [ECF No. 61 at ¶186].  Ms. DeQuito received a summative score for the 2014-2015 school year of 2.48, which is classified as "partially effective." [ECF No. 61 at 199].

On August 21, 2015 Ms. DeQuito was notified by the State District Superintendent that she was being brought up on tenure charges of inefficiency and that effective immediately, she was under suspension with pay. [ECF No. 61 at ¶203].  On September 2, 2015, Plaintiff resigned from her employment and did not contest the tenure charges. [ECF No. 61 at ¶204 and ECF No. 95-23 at 100:23-101:2].

### F. DISPOSITION OF CLAIMS.

On December 10, 2018, Plaintiff Dolores Everette dismissed the Camden City School District from this litigation.  [ECF No. 93]

All Plaintiffs agreed to voluntarily dismiss Defendants Rouhanifard, Martinez-Vega, Boyce, Baynes, and Byrd-Robison with prejudice and entered a stipulation to that effect on Apr. 12, 2019.  [ECF No. 94]  Judge Kugler ordered those dismissals on November 6, 2019.  [ECF No. 108]

On May 1, 2019, Defendants filed a motion for summary judgment of all remaining claims. [ECF No. 95] On January 9, 2020, Judge Kugler entered his order and opinion granting the motion for summary judgment in part and denying it in part. He dismissed Plaintiffs' ADEA claims with prejudice; dismissed the LAD and CEPA claims against the District without prejudice to refile in a court of competent jurisdiction and dismissed all of the other claims except for Plaintiff Pierce's claims against Defendant Miles under 42 U.S.C. § 1983, the CRA, CEPA, and the LAD. [ECF No. 109, 110] Plaintiffs then filed a motion for reconsideration, which Judge Kugler denied by order and opinion dated January 9, 2020. [ECF Nos. 117-118]

Plaintiff Pierce later settled her remaining claims with Defendants on July 26, 2022. [ECF No. 163]

This appeal followed.

## II.  SUMMARY OF THE ARGUMENT

This appeal addresses only three of the claims which were brought by Plaintiffs: (1) the LAD claims for alleged age discrimination as brought by Plaintiffs Goode, Mann, Dequito and Atwater; (2) the First Amendment retaliation claim brought by Goode; and (3) the CEPA whistle-blower claim brought by Goode. None of the other claims raised in this litigation are subject to this appeal.

First, all of the Plaintiffs' LAD age-discrimination claims are barred because one of the necessary elements of the tort is that the plaintiff must have suffered an adverse employment action.  However, in this case, the Plaintiffs each tendered their resignations when informed that tenure charges were or were likely to be filed, due to deficient performance evaluations.  However, a poor performance evaluation, without more, is insufficient to establish an adverse employment action, and Plaintiffs all resigned before suffering any adverse effects of their deficient evaluations.

Second, Goode failed to satisfy the requirement for her First Amendment retaliation claim that she was addressing a matter of public concern.  In this case, she claimed that one of her communications with the Camden Board of Education was a matter of public concern because it contained the word "biased" as a charge against Defendant Gehring.  However, the communication in question did not allege that this supposed bias was premised on her age or any other improper basis, and the trial judge properly found that an allegation that someone was biased against her demonstrated nothing more than a personal bias and not one based on a protected class.  As such, that allegation addresses merely private concerns and fails to establish a First Amendment claim.

Furthermore, Defendant Gehring would, in any event, be entitled to qualified immunity.

Finally, Plaintiff Goode failed to demonstrate a basis for the CEPA whistleblower claims.  Plaintiff's allegations failed to address a matter of public concern, as her complaints were all private grievances.  Further, while Plaintiff argues that some CEPA whistleblower claims need not assert a matter of public concern, nothing in the Plaintiff's alleged whistleblowing document highlights fraud, criminal activity, of anything similar, and appears to be also premised on the claim that because she used the term "biased"—without linking it to any protected category—that somehow she set forth a valid whistleblower claim.

As such, Plaintiff failed to demonstrate any reversible error by Judge Kugler.

## III.  ARGUMENT

On appeal, Plaintiff only raise three issues: whether Judge Kugler erroneously dismissed (1) the Plaintiffs' LAD age-discrimination claims; (2) Goode's First Amendment retaliation claim; and, (3) Goode's CEPA claim.  No other argument is presented in Plaintiffs' brief.

### A.  *JUDGE KUGLER PROPERLY DISMISSED THE COUNTS UNDER THE LAD FOR AGE DISCRIMINATION, AS PLAINTIFFS FAILED TO DEMONSTRATE AN ADVERSE EMPLOYMENT ACTION.*

First Plaintiffs Goode, Mann, Dequito and Atwater argue that Judge Kugler erred by finding that they could not demonstrate a prima facie case of age discrimination under the LAD.  Judge Kugler held that because Plaintiffs could cite to nothing more that flowed from their negative performance evaluations, they

could not meet the "adverse employment action" requirement of the LAD and therefore summary judgment was proper.

Summary judgment under Fed. R. Civ. P. 56, is appropriate when the Court is convinced that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any... demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

The movant bears the initial burden demonstrating the absence of genuine issue of material fact. Id. at 322-23. A dispute or issue of material fact is only "genuine" if the evidence is such that a reasonable jury could return a verdict in factor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the Court should view all evidence and all reasonable inferences in light most favorable to the non-movant, the Court need not credit the mere allegations of the non-movant's pleadings. Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008) (citation omitted).

After the movant meets this burden, the non-moving party must "set forth specific facts showing that there [are]... genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The non-movant may not "rest upon mere allegation[s] or denials of [their] pleading," but must set forth specific facts

and present affirmative evidence demonstrating the genuine issue.  Id. at 256-57

(emphasis added); see also Fed. R. Civ. P. 56(c)(1)(A).  In addition, "if the non-

moving party's evidence 'is merely colorable,... or is not significantly probative,...

summary judgment must be granted.'"  Trap Rock Indus., Inc. v. Local 825, Int'l

Union of Operating Engingeers, AFL-CIO, 982 F.2d 883, 890-91 (3d Cir. 1992)

(citation omitted).

To establish a prima facie case under either the LAD, a plaintiff must show

that:

> (1) he was over 40 years old;
>
> (2) he was qualified for the position at issue,
>
> (3) he suffered an adverse employment action; and
>
> (4) that such action occurred under circumstances giving
> rise to an inference of discrimination.

Id. at 973 (emphasis added); Abrams v. Lightolier Inc., 50 F.3d 1204, 1212 (3d

Cir. 1995) (New Jersey courts in applying the LAD generally follow the standards

of proof applicable under the federal discrimination statutes).

Should Plaintiff establish a prima facie case, the burden of production shifts

to the employer to articulate a legitimate, nondiscriminatory reason for the

employer's action.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ; and

Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1137 (N.J. 2005) (citing Clowes v.

Terminix Int'l, Inc., 538 A.2d 794, 805-06 (N.J. 1988)).  If the defendant posits

such a non-discriminatory justification, the burden of production is then on the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination." Id.

### *Plaintiffs Did Not Suffer an Adverse Employment Action*

Because Plaintiffs Goode, Mann, Dequito, and Atwater voluntarily resigned from their employment, they did not suffer an adverse employment action and their poor performance reviews, without more, does not constitute adverse employment action.

It is well-established law that a poor performance evaluation, without more, does not establish adverse employment action. An adverse employment action is one which is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015). Here, Plaintiffs only suffered negative performance evaluations, but those evaluations, themselves, failed to alter the Plaintiffs' compensation, terms, conditions, and privileges of employment and, as such, do not constitute adverse employment action. See, e.g., Smart v. Ball State Univ., 89 F.3d 437, 442 (7th Cir. 1996); Foster v. Ashcroft, No. 05-1734, 2006 WL 1995305, at *2 (D.N.J. 2006) (noting that "[r]esults of a performance evaluation do not constitute an adverse employment action unless they have some tangible effect upon the recipient's employment" (internal quotation omitted)).

16

Judge Kugler properly held that because Plaintiffs resigned, and none were terminated pursuant to tenure charges.  Under New Jersey law, an LAD complaint may not be based on the mere filing of disciplinary action by an employer.  Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 611, 626 (N.J. 2002) ("without more, an employer's filing of a disciplinary action cannot form the basis of a LAD complaint.")

Plaintiffs argue that Judge Kugler erred by supposedly not considering caselaw from other jurisdictions on the question of whether a poor performance rating can be considered an adverse action, and did not account for the totality of the circumstances.

However, there is no merit to those arguments.  First, Judge Kugler was not bound to consider law from other Circuits.  United States v. Maury, 695 F.3d 227, 259 n. 27 (3d Cir. 2012) ("Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit.") Moreover, it would be inappropriate to do so here, in light of the fact that this is an issue of New Jersey law and the New Jersey Supreme Court in Shepherd informed Judge Kugler's decision.

Furthermore, Judge Kugler did consider the totality of the circumstances. Plaintiffs argue that the process to challenge tenure charges were "stacked against tenured teachers" and that teachers who lost their challenges "would lose their

jobs, pensions and teacher's certification in New Jersey" should somehow be of relevance here.  [Plaintiff's brief at 17]

However, Plaintiff provides no facts to support these allegations save for hearsay attributed to legal counsel Plaintiffs received.  [Plaintiff's brief at 17, Appx. 96]  There was certainly nothing which prevented Plaintiffs from mounting an appropriate defense to those charges and defeating them if the law was on Plaintiffs' side.  Rather than contesting or objecting to the tenure charges, these Plaintiffs chose to voluntarily resign.  Plaintiffs cannot allege that their resignations were as a result of "coercion or distress," nor do Plaintiffs allege that the District obtained their resignation through deceit or misrepresentations.

Further, the fact that a plaintiff might choose to resign, rather than risk losing benefits by contesting the tenure charge, does not change Plaintiff's voluntary choice into an adverse employment action.   As Judge Kugler held, Plaintiffs needed to show that the "negative performance evaluation, disciplinary action, or administrative leave eventually led to a tangible change in the circumstances of employment—being fired, demoted, or something equally grave." [Appx. at 37].  Because of their resignations, Plaintiffs were not "fired, demoted, or something equally grave" as a result of their negative performance reviews, so they could not meet the prima facie requirements.

Plaintiff Goode also points to her allegations that the fifth evaluation of Goode in the 2014-2015 school year, undertaken by Christine Whitzell, was an "untrue, inaccurate and false" fifth evaluation.  [Plaintiff's brief at 18]  Plaintiffs assert that that allegation "was used as a basis to detrimentally alter the terms and conditions of Goode's employment."  Id.  As with the other allegation, the allegation regarding the fifth evaluation demonstrates nothing more than that she received a negative performance evaluation.  Furthermore, if, as she alleges, the fifth evaluation was improper, that was an argument upon which she could have based a defense of the tenure charges, however, it does not amount to an adverse employment action.

But Plaintiffs are wrong to assert that the fifth evaluation "was used as a basis to detrimentally alter the terms and conditions of Goode's employment" because, as Judge Kugler recognized, the terms and conditions of Plaintiffs' employment were altered by their own voluntary action in resigning, not by their evaluations.

In Denkins v. State Operated Sch. Dist. of the City of Camden, No. 1:16-cv-00653-JBS-AMD, 2016 WL 6683541, at *8 (D.N.J. Nov. 14, 2016), aff'd, 715 F. App'x 121 (3d Cir. 2017), a virtually identical case in the District Court, Judge Jerome Simandle found that an employee's resignation in lieu of contesting tenure charges constitutes a voluntary resignation.

Denkins concerned allegations that four tenured employees at the Camden City School District retired and later sought to assert claims, including a § 1983 due process claim, alleging that the retirements were "involuntary" in light of the pending tenure charges.  In Denkins, the Camden School District adopted and implemented a new evaluation rubric to assess principals and vice principals during the 2013-2014 school year.  Id. at 4.  Each principal and vice principal was to receive three evaluations during the course of the school year and upon completion of the evaluations, individuals who received a rating of less than "effective" was subject to tenure charges.  Id.  The four Denkins plaintiffs received less than "effective" summative scores, were given notice of tenure charges, and thereafter resigned rather than fight the tenure charges.  Id. at 6-7.

Plaintiffs thereafter filed suit in the Federal District Court of New Jersey alleging irregularities in their evaluations based on the credentials of Ms. Gilbert, one of the evaluators, and claiming that they were improperly forced to retire.  On a Motion to Dismiss, Judge Simandle specifically held that the four employees had voluntarily resigned because there was no evidence that the district obtained the resignations by duress or coercion or by deceiving or materially misrepresenting any facts.  Judge Simandle reasoned:

> The general presumption is that employee resignations are voluntary.  This presumption will prevail unless the employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted.

> The Third Circuit has established two circumstances in which an employee's resignation or retirement will be deemed involuntarily for due process purposes: (1) when the employer forces the resignation by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee.
>
> ...
>
> The Court finds that Plaintiffs cannot plausibly allege that there was a material misrepresentation, or even a misrepresentation at all… Thus, because Plaintiffs' resignations were not obtained through a misrepresentation regarding Defendant Gilbert's credentials, Plaintiffs' resignations must be deemed voluntary.

Id. at 23-25, (internal cites, quotes, and modifications omitted.)

The same is true in this case.  Each of the Plaintiffs here received insufficient scores in their evaluations under the new rubric and therefore faced tenure charges.  Rather than contesting or objecting to the tenure charges, these Plaintiffs chose to voluntarily resign.  Plaintiffs do not allege that their resignations were as a result of coercion or distress, nor obtained through deceit or misrepresentations.  Instead, Plaintiffs voluntarily resigned because they believed it was in their best interest to do so.  However, that decision is not rendered involuntary simply because Plaintiffs deemed it to be too risky to contest the charges.  Thus, the resignations were voluntary and Plaintiffs cannot demonstrate an adverse employment action.

Therefore, Plaintiffs' age discrimination claims under the LAD were

properly dismissed.  This Court is asked to affirm that dismissal.

**B. *JUDGE KUGLER PROPERLY DISMISSED PLAINTIFF GOODE'S CLAIM FOR FIRST AMENDMENT RETALIATION BECAUSE SHE DID NOT ASSERT A CLAIM FOR A MATTER OF PUBLIC CONCERN.***

Next, Plaintiffs argue that Goode satisfied the "matter of public concern"

element in her First Amendment claim.  There is no merit to this argument.

Goode's First Amendment claim is premised on the theory that she engaged

in a protected activity under the First Amendment and were retaliated against as a

consequence.   In particular, Goode points to her August 21, 2014 petition with the

Department of Education, Bureau of Controversies and Disputes regarding the

evaluations she disagreed with, as her protected speech.  (Pls.' 4th Am. Compl.

¶¶76, 77.)  Nothing in the record supports the notion that Goode "spoke out" about

a matter of public concern as a private citizen and, thus, she cannot demonstrate

that their speech was a protected under the First Amendment.

To make out a First Amendment retaliation claim rising out of a public

employment context, a plaintiff must show that: "(1) his speech is protected by the

First Amendment and (2) the speech was substantial or motivating factor in the

alleged retaliatory action, which if both are proved, shifts the burden to the

employer to prove that (3) the same action would have been taken even if the

speech had not occurred."  <u>Dougherty v. Sch. Dist.</u>, 772 F.3d 979, 986 (3d Cir.

2014) (citing <u>Gorum v. Sessoms</u>, 561 F.3d 179, 184 (3d Cir. 2009)).  The issue of whether a speech is entitled to protection of the First Amendment is a question of law.  <u>Id</u>. at 987 (citing <u>Connick v. Myers</u>, 461 U.S. 138, 148 n.7 (1983)).

To meet the first prong, the public employee must demonstrate that: (1) she was speaking as a citizen, (2) on a matter of public concern, and (3) the employer did not have an "adequate justification for treating the employee differently from any other member of the general public."  <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006) (citations omitted).  When a public employee speaks as an employee on matters of personal interests, she is not entitled to First Amendment protection. The Supreme Court held:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.  Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.

<u>Connick</u>, 461 U.S. at 147 (internal citation omitted); <u>see also</u> <u>Garcetti</u>, 547 U.S. at 420 ("Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it ***does not empower them*** to 'constitutionalize the employee grievance,'" emphasis added).

The two steps of the public concern inquiry involve: (1) identifying a statement that implicates a matter of public concern, and then (2) assessing the "content, form, and context of [that] statement, as revealed by the whole record." Connick, 461 U.S. at 147–48.

Judge Kugler recognized five matters asserted as being of First Amendment concern:

> (1) a meeting between Goode and Kim Buell-Alves, a representative of the District;
>
> (2) a May 12, 2014 letter to Superintendent Rouhanifard (Doc. No. 104-17);
>
> (3) a May 13, 2014 letter to Commissioner of Education David Hespe (Doc. No. 104-18);
>
> (4) a June 23, 2014 letter to Superintendent Rouhanifard (Doc. No. 104-19); and
>
> (5) an August 21, 2014 Petition to the Camden Board of Education (Doc. No. 104-20)

[Appx. at 24]. He concluded that the first, fourth and fifth failed to assert a matter of public concern, and so failed to mount the first hurdle set out in Connick. [Appx. at 24-25]. He then found that the second and third failed because the content, form and context of those statements demonstrated that the body of the letters were focused on Goode's complaints about her own treatment. [Appx. at 25-26].

In their brief in this Court, the Plaintiffs only take issue with the fifth item listed, the August 21, 2014 letter.  Plaintiffs claim that because that letter included the word "biased" in complaining about the supposed unfair treatment Goode experienced at the hands of Mr. Gehring,  that therefore meant that Goode was addressing a matter of public concern because "[b]iased means that the aggrieved employee was discriminated against."  [Plaintiff's Brief at 21].

However, Judge Kugler, directly addressed that point, noting that "[a]lthough an allegation that the evaluators were biased against her due to her age, race, or other protected status may have been sufficient to survive step one, a plain assertion of bias is not. Without more, such an assertion only indicates that the evaluators were biased against Goode personally, which is not a matter of public concern."  [Appx. at 25, n.8]

Plaintiffs failed to support the assertion that a petition or complaint which raises a generalized claim of bias, and not a claim bias based on a protected category, necessarily raises a public concern.  That argument is simply unsupportable, as the law in this area does not take issue with or concern itself with individualized, personal bias, but, rather, bias based on protected categories and invidious discrimination.

Accordingly, there is no issue of genuine material fact that Goode engaged in any activity protected by the First Amendment.  Summary judgment was therefore proper and should be affirmed.

### *Gehring is Entitled to Qualified Immunity*

Alternatively, because there was no violation of "clearly established constitutional right" as demonstrated above, Gehring is entitled to qualified immunity.  Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Berg v. Cty. Allegheny, 219 F.3d 261, 272 (3d Cir. 2000) ("A government official is entitled to immunity if his 'conduct does not violate a clearly established stator or constitutional rights of which a reasonable person would have known.'").  Because qualified immunity is an immunity from lawsuit rather than a mere defense to liability, this immunity from lawsuit "is effectively lost if a case is erroneously permitted to go to trial."  Mitchell v. Forsythe, 472 U.S. 511, 528 (1985).  More importantly, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery."  Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).

Here, Plaintiff asserts that qualified immunity should not be granted to Gehring, notwithstanding that Judge Kugler did not address the argument, because, as a general matter, "the right of public employees who speak as private citizens on

matters of public concern to not be retaliated against is clearly established."
[Plaintiff's brief at 21.]

However, the Supreme Court has stated that the right at issue must not be defined at a "high level of generality."  "Under our cases, the clearly established right must be defined with specificity. This Court has repeatedly told courts not to define clearly established law at a high level of generality."  City of Escondido, Cal. v. Emmons, ___ U.S. ___, 202 L. Ed. 2d 455, 139 S. Ct. 500, 503 (2019) (internal quotation and modifications omitted.)  "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (internal quotes omitted.)

Thus, under the argument which Plaintiffs make in their brief, the proper level of specificity is not whether the general outline of the law is violated, but, rather, whether it is violated when a party merely states an allegation of non-specific "bias" but does not assert a protected category as the basis for that alleged bias.  There appears to be no case law on this point from which it can be determined that a generalized allegation of bias must be viewed as a claim of bias based on age, or some other protected category.  As such, there is no clearly established right which precludes specific action taken against a party in response to such a generalized allegation.  Under these circumstances, qualified immunity would be proper.

### C. JUDGE KUGLER PROPERLY DISMISSED PLAINTIFF GOODE'S CEPA CLAIM FOR FAILURE TO PROPERLY PLEAD AN ACT OF WHISTLEBLOWING.

Finally, Plaintiffs also argue that Judge Kugler erred in dismissing Goode's CEPA retaliation claim for failure to demonstrate that she engaged in "whistleblowing" activity.  In particular, Goode again points to her August 21, 2014 Petition to the Camden Board of Education, as the basis for the claim.

#### _Goode's CEPA Claim is Without Merit_

CEPA provides a private cause of action for an employee who alleges that an employer took retaliatory action against them because she "disclose[d]... to a supervisor or to a public entity an activity, policy, or practice of the employer... that the employee reasonably believes is in violation of law, or a rule or regulation promulgated pursuant to law." N.J.S.A. 34:19-3(a)(1).  To make a CEPA claim, an employee must establish: (1) she had a reasonable belief that her employer's conduct was violating a law, rule or regulation; (2) that she engaged in a whistleblowing activity; (3) that she suffered an adverse employment action; and (4) a causal connection can be demonstrated between the whistleblowing activity and the adverse employment action taken against her.  See Fioriglio v. City of Atlantic City, 995 F. Supp. 379, 393 (D.N.J. 1993), aff'd 185 F.3d 861 (3d Cir. 1999); Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).

As Judge Kugler correctly noted, CEPA is not properly used when asked to address private workplace grievances which are devoid of any public ramifications. Maw v. Advanced Clinical Comm., Inc., 846 A.2d 604, 608 (N.J. 2004) ("[T]he complained of activity must have public ramifications, and that the dispute between employer and employee must be more than a private disagreement."); Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1013 (N.J. 1998) ("[T]he offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee."); Beasely v. Passaic Cty., 873 A.2d 673, 685 (N.J. Sup. Ct. App. Div. 2005) (noting that CEPA is not intended to "settle internal disputes at the workplace" (internal quotation omitted)). Nor does CEPA shield "[v]ague and conclusory complaints." Battaglia v. United Parcel Service, Inc., 70 A.3d 602, 627 (N.J. 2013) (finding that letter phrased in general terms did not put defendant on notice that plaintiff was blowing the whistle on alleged credit card fraud).

In this case, Judge Kugler properly found that the same analysis which doomed Plaintiff's First Amendment claim doomed her CEPA claim, because the subject matter of her complaints were all private grievances about how she was treated, and did not address matters of public concern or were "too vague or conclusory" to raise issues concerning age discrimination or other illegal activity. [Appx. at 32]

In their brief, Plaintiffs broadly argue that Goode was proceeding under multiple subsections of N.J.S.A. 34:19-3, and claim that under Battaglia, 70 A.3d at 626, Chiofalo v. State, 213 A.3d 900, 909-911 (N.J. 2019) and Estate of Roach v. TRW, Inc., 754 A.2d 544 (N.J. 2000), that CEPA does not require the complaint to be a matter of public concern and may protect "wholly private grievances." Plaintiffs' arguments are misguided.

First, the issue of whether a claim must address a matter of public concern was not raised in Battaglia, as the subject of the alleged whistleblowing was clearly within the statute.  See, Battaglia, 214 N.J. at 557 (claim involved whistleblowing alleging fraud by co-worker.)  However, in Chiofalo, the questions at issue were whether a CEPA claim could be premised on allegations concerning a refusal by a police officer to wrongly destroy internal police document; and on a complaint that a supervisor misreported vacation time.  Chiofalo, 213 A.3d at 532-534.

As to the latter, the Court concluded that the complaints were "simply too amorphous to constitute "'whistleblowing' as contemplated by CEPA."  Chiofalo, 213 A.3d 911.  This was in keeping with the law, as the Chiofalo Court also quoted Battaglia for the proposition that "'[v]ague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness' are not protected under CEPA." Id., at 910 (citing Battaglia, 70 A.3d at 627.)

Moreover, Plaintiff's citation to <u>Estate of Roach</u> is misguided, because the question faced by the Court in that case was whether a claim brought under section 3c.(3)—which provides that a CEPA claim may be based on a party objecting to or refusing to participate in an activity, policy or practice which is reasonably believed to be "incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." <u>N.J.S.A.</u> 34:19-3—is cognizable even in the absence of a separate showing that the activities implicated the public interest. <u>Estate of Roach</u>, 754 A.2d at 549. By contrast, none of the allegations which Plaintiff raises implicate "public health, safety or welfare or protection of the environment" here so <u>Estate of Roach</u> is irrelevant.

In this case, Plaintiffs based their argument on the August 21, 2014 Petition to the Camden Board of Education (Appx. 111-119), as they did their First Amendment argument. However, that petition merely catalogues the events in the application of the Danielson Rubric as it relates to her and her evaluations and fails to raise anything other than Goode's private workplace grievances and her personal complaints about the way her evaluations were performed and the results which were reached. Indeed, the petition consists of fourteen specific complaints about treatment she received, mostly by Mr. Keith Miles, which Goode found harassing, disrespectful and unprofessional, but all of which addressed specific matters concerning Ms. Goode's teaching, interactions with students, and complaints

which Mr. Miles had about Ms. Goode's performance, to which she took offense.

None of those matters concerned activity which was in any way fraudulent,

criminal, illegal, or impacting a matter of public concern.

Further, Plaintiffs are wrong in their assertion that the mere mention of the

term "biased" is sufficient to establish a CEPA claim. [Plaintiff's brief at 28]

Rather, it is the kind of vague and conclusory statement which both the Chiofalo

and Battaglia Courts found insufficient to assert a CEPA claim.  Chiofalo, 213

A.3d at 910; Battaglia, 70 A.3d at 627.

Indeed, the statement itself is part of the relief requested in the petition,

where Goode demands the Commissioner of Education  "[c]orrect the errors on

Ms. Gehring's 2 evaluations and Mr. Miles Domain 4, by removing unfair,

opinionated and biased Partial Effective and Ineffective judgments that lead [*sic*]

me to being categorized as a Partially Effective(less than effective educator- 2.6)."

(Appx. 119)

Not only does that provision demonstrate that the petition was grounded in

private grievance by Goode, but it shows that the claim here—that "[b]iased means

that the aggrieved employee was discriminated against" [Plaintiff's brief at 28] and

therefore the mere inclusion of the word was sufficient for this to support a CEPA

claim—is simply unsupportable.  Not only is there no indication that the "biased"

language was intended to demonstrate age discrimination, but in the entirety of the

petition, Goode fails to mention "age" or "discrimination" even once in nine single-spaced pages.

The inclusion of the word "biased" was nothing but, at best, a vague and conclusory statement, insufficient to support a CEPA claim. As such, Plaintiffs' argument should be rejected and this Court should affirm the grant of summary judgment.

## IV.  CONCLUSION

For all the foregoing reasons, this Court is respectfully requested to affirm the grant of summary judgment and the dismissal of the plaintiff's Complaint.

Respectfully Submitted,

**Marshall Dennehey Warner Coleman & Goggin**

/s/ Walter F. Kawalec, III
Walter F. Kawalec, III, Esquire
*Attorney for Defendants,*
*Camden City School District, Paymon*
*Rouhanifard, Keith Miles, Hye-Won*
*Gehring, Gloria Martinez-Vega, Laura*
*Boyce, Cameron Baynes, and Genevieve*
*Byrd-Robinson*

## V.   CERTIFICATION OF BAR MEMBERSHIP

The undersigned hereby certifies that, pursuant to 3d Circuit Local Appellate Rule 46.1(e), Walter F. Kawalec, III is a member of the bar of this Honorable Court, is in good standing in all jurisdictions in which he is admitted to practice, and that there are no disciplinary proceedings pending against him in any jurisdiction.

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

/s/ Walter F. Kawalec, III
Walter F. Kawalec, III, Esquire
*Attorney for Defendants,*
*Camden City School District, Paymon*
*Rouhanifard, Keith Miles, Hye-Won*
*Gehring, Gloria Martinez-Vega, Laura*
*Boyce, Cameron Baynes, and Genevieve*
*Byrd-Robinson*

DATED: April 3, 2023

## VI.  CERTIFICATE OF COMPLIANCE  WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, TYPE STYLE, AND ELECTRONIC FILING REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because:

- this brief contains 7,181 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

3.    This brief complies with the requirements of Third Circuit LAR 31(b) & (c)  because:

- it has been checked with virus-checking software, viz., McAfee, and the e-brief and hard copy served on counsel are identical.

- the electronic copy of this brief is identical to the hard copies of this brief.

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

/s/ Walter F. Kawalec, III
Walter F. Kawalec, III, Esquire
*Attorney for Defendants,*
*Camden City School District, Paymon*
*Rouhanifard, Keith Miles, Hye-Won*
*Gehring, Gloria Martinez-Vega, Laura*
*Boyce, Cameron Baynes, and Genevieve*
*Byrd-Robinson*

DATED: March 31, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Brief for Appellees, was,

on the date listed below, served upon the parties listed below, in the manner

indicated:

By E-filing to the following:

**Kober Law Firm, LLC**
Peter Kober, Esq.
1864 Route 70 East
Cherry Hill, NJ 08003
Attorney for Plaintiffs

                            **MARSHALL DENNEHEY WARNER**
                            **COLEMAN & GOGGIN**

                            /s/ Walter F. Kawalec, III
                            Walter F. Kawalec, III, Esquire
                            *Attorney for Defendants,*
                            *Camden City School District, Paymon*
                            *Rouhanifard, Keith Miles, Hye-Won*
                            *Gehring, Gloria Martinez-Vega, Laura*
                            *Boyce, Cameron Baynes, and Genevieve*
                            *Byrd-Robinson*

DATED: March 31, 2023