United States Court of Appeals

for the

Third Circuit

Case No. 22-3044

MARGARET GOODE, NICOLE MANN, ESTATE OF JESSICA DEQUITO, THERESA ATWATER and JACQUELINE BALLINGER,

*Appellants*

v.

CAMDEN CITY SCHOOL DISTRICT, PAYMON ROUHANIFARD, KEITH MILES, HYE-WON GEHRING, GLORIA MARTINEZ-VEGA, LAURA BOYCE, CAMERON BAYNES and GENEVIEVE BYRD-ROBINSON,

*Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

No. 1:16-cv-03936

**REPLY BRIEF ON BEHALF OF APPELLANTS**

| | |
|---|---|
| On the Brief: | Kober Law Firm, LLC |
| Peter Kober, Esq. | 1864 Route 70 East |
| | Cherry Hill, N.J. 08003 |
| | (856) 761-5090 |

# **TABLE OF CONTENTS**

                                                                                                **Page**

**ARGUMENT** ……………………………………………………….. 1

I. GOODE, MANN, DEQUITO AND ATWATER SATISFIED THE ADVERSE EMPLOYMENT ACTION ELEMENT OF A *PRIMA FACIE* CASE OF AGE DISCRIMINATION UNDER THE TOTALITY OF THE CIRCUMSTANCES, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR …………………………………………………. 1

II. GOODE SATISFIED THE PRIVATE CITIZEN COMMENTING ON A MATTER OF PUBLIC CONCERN ELEMENT OF A CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION AGAINST GEHRING, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR ………………………………………………… 6

   1. THE GRANTING OF QUALIFIED IMMUNITY FOR GEHRING'S CONDUCT SHOULD NOT OCCUR ……………… 7

III. GOODE SATISFIED THE WHISTLE-BLOWING ELEMENT OF A *PRIMA FACIE* CASE UNDER CEPA AGAINST GEHRING, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR ………………………………….. 9

**CONCLUSION** …………………………………………………… 14

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages(s)**

*Battaglia v. United Parcel Serv.,*
214 N.J. 518, 70 A.3d 602 (2013) …………………………………….. 13

*Beasely v. Passaic County,* 377 N.J. Super. 585 (App. Div. 2005) ……. 13

*City of Escondido v. Emmons,* 139 S.Ct. 500 (2019) …………………… 7

*Denkins v. State Operated Sch. Dist. of the City of Camden,* Civ. No.
16-653-JBS-AMD (D.N.J. Nov. 14, 2016) ………………………………… 5

*De Ritis v. McGarrigle,* 861 F.3d 444 (3d Cir. 2017) …………………… 6

*Dougherty v. School Dist. of Philadelphia,*
772 F.3d 979 (3d Cir. 2014) …………………………………………… 6, 7, 9

*Estate of Roach v. TRW, Inc.,* 164 N.J. 598 (2000) ……………… 10, 11, 12

*Hope v. Pelzer,* 536 U.S. 730 (2002) ……………………………………… 8

*James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371 (4th Cir. 2004) …….. 1

*James v. New Jersey State Police,* 957 F.3d 165 (3d Cir. 2020) ………...... 7

*Lucas v. Chicago Transit Authority,* 367 F.3d 714 (7th Cir. 2004) ….....… 1

*Maw v. Advanced Clinical Communications, Inc.,* 179 N.J. 439 (2004) … 12

*McGreevy v. Stroup,* 413 F.3d 359 (3d Cir. 2005) …………………….. 8

*Mehlman v. Mobil Oil Corp.,* 153 N.J. 163 (1998) ……………………. 11, 12

*Munroe v. Central Bucks School District,*
805 F.3d 454 (3d Cir. 2015) ……………………………………………….. 6

*Oest v. Illinois Department of Corrections,*
240 F.3d 605 (7th Cir. 2001) …………………………………………….… 1

*Pickering v. Board of Education,* 391 U.S. 563 (1968) …………………….. 8

*Rankin v. McPherson,* 483 U.S. 378 (1987) ………………………….… 8, 9

*Shepherd v. Hunterdon Dev. Ctr.,* 174 N.J. 1 (2002) ………………….….. 5

*Spears v. Missouri Dep't of Corr. & Human Res.,*
210 F.3d 850 (8th Cir. 2000) ……………………………………………… 1

*Starnes v. Butler Cty. Court of Common Pleas, 50th Judicial Dist.,*
971 F.3d 416 (3d Cir. 2020) ………………………………………………. 9

*Taylor v. Riojas,* 141 S.Ct. 52 (2020) ……………………………………. 7, 8

*Turner v. Gonzalez,* 421 F.3d 688 (8th Cir. 2005) ………………………….. 2, 3

*White v. Pauly,* 137 S.Ct. 548 (2017) ……………………………………… 7

*Wilkerson v. New Media Technology Charter School Inc.,* 522 F.3d 315 (3d Cir. 2008) ………………………………………………………….. 3

*Wilkie v. Robins,* 551 U.S. 537 (2007) ………………………………………. 9

**Statutes**

N.J.S.A. 2C:30-2 ………………………………………………………….. 13

N.J.S.A. 34:19-3a(1) ………………………………………… 9, 10, 11, 13

N.J.S.A. 34:19-3a(2) ………………………………………… 9, 10, 11, 13

N.J.S.A. 34:19-3c(1) ………………………………………… 9, 10, 11, 13

N.J.S.A. 34:19-3c(2) ………………………………………… 9, 10, 11, 13

N.J.S.A. 34:19-3c(3) ……………………………………………… 10, 11, 12

N.J.S.A. 52:13D-23(e)(7) …………………………………………………. 13

# ARGUMENT

I. **GOODE, MANN, DEQUITO AND ATWATER SATISFIED THE ADVERSE EMPLOYMENT ACTION ELEMENT OF A *PRIMA FACIE* CASE OF AGE DISCRIMINATION UNDER THE TOTALITY OF THE CIRCUMSTACES, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR**

Adverse employment actions "come in many shapes and sizes." *Oest v. Illinois Department of Corrections,* 240 F.3d 605, 613 (7th Cir. 2001). For this reason, when analyzing whether a particular adverse action is material, "it is important to consider the particular factual details of each situation." *Oest v. Illinois Department of Corrections, supra,* 240 F.3d at 613.

An unfavorable performance evaluation may be actionable where the employer subsequently uses the unfavorable evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. *Spears v. Missouri Dep't of Corr. & Human Res.,* 210 F.3d 850, 854 (8th Cir. 2000); *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 377 (4th Cir. 2004) (same). Where there is some tangible job consequence accompanying the unfavorable performance evaluation or reprimand, it may rise to the level of a material adverse employment action. *Lucas v. Chicago Transit Authority,* 367 F.3d 714, 731 (7th Cir. 2004).

Forfeiture of an automatic (i.e., one that is non-discretionary) term or condition of employment is one such tangible job consequence which will raise the unfavorable performance review to an adverse employment action. *See, Turner v. Gonzalez,* 421 F.3d 688, 696 (8th Cir. 2005). There, "Turner contend[ed] that the performance rating downgrade detrimentally altered the terms of her employment by making her ineligible for," among other things, "automatic time-in-grade step increases" in salary. *Turner v. Gonzalez, supra,* 421 F.3d at 696. The Eighth Circuit agreed, since the performance rating downgrade "delayed an otherwise automatic salary increase. No exercise of discretion would have been necessary for Turner's salary to increase; it would have happened automatically as long as her performance rating remained at 'Fully Successful' or higher. In other words, in this case the performance rating downgrade directly forfeited a non-discretionary salary increase, detrimentally altering the terms and conditions of Turner's employment." *Turner v. Gonzalez, supra,* 421 F.3d at 696.

The reasoning of *Turner v. Gonzalez, supra,* 421 F.3d at 696, is worthy of being followed by the Third Circuit. Here, Goode, Mann, Dequito and Atwater were tenured teachers employed by the District. Since they were tenured teachers, the District had the non-discretionary obligation to rehire each of them for the following school year. In other words, the rehiring of each of these tenured

2

teachers for the following school year was an automatic function of the District. As such, it was not materially distinguishable from the automatic salary increase mandated in *Turner*. Moreover, the "failure to rehire can constitute an adverse employment action." *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).

Here, however, a series of unfavorable job performance evaluations for each of these tenured teachers – two consecutive annual summative ratings of partially effective or worse – did result in the filing of tenure charges of inefficiency against three of these tenured teachers (Goode, Mann and Dequito) (A68, A73, A74). These three tenured teachers were notified that they were being brought up on tenure charges by the District Superintendent on August 21, 2015 (A68, A73, A74). In other words, instead of letters from the District notifying them of their automatic reappointment for the 2015-2016 school year, each of these teachers were notified in the third week in August that they would need to fight tenure charges filed against them in order to keep their jobs. The denial of an automatic term or condition of employment by the District was the failure to notify them of their reappointment for the 2015-2016 school year. This denial of an automatic term or condition of employment was materially indistinguishable from the denial of a salary increase in *Turner*.

The fourth teacher (Atwater) was threatened with tenure charges in the winter-spring of 2016 (A107). In each of these cases, the tenure charges filed or threatened against these tenured teachers were caused by a series of unfavorable job performance ratings under 2.65 for each of the previous two years. The denial of automatic reappointment for the following school year was materially indistinguishable from the denial of an automatic salary increase in *Turner*. Since these unfavorable job performance ratings were used as a basis to detrimentally alter the automatic terms or conditions of these teachers' employment, their cumulative effect was that of an adverse employment action.

Gehring contends that Plaintiffs' choice to voluntarily resign rather than face tenure charges somehow supports the district judge's decision that the factual circumstances were not an adverse employment action. However, Gehring and the district judge overlooked the sequence of events. First, each of these tenured teachers failed to receive her notice of automatic reappointment for the following school year. Rather than the receipt of notice of automatic reappointment for the following school year, three of these tenured teachers received notice of tenure charges filed against them the third week in August 2015, and the fourth was threatened with tenure charges in the winter-spring of 2016. It was only after the District failed to perform its function of automatically rehiring them for the

4

following school year that these tenured teachers chose to retire and collect their pensions. Thus, the adverse employment action had occurred before these tenured teachers chose to retire.

*Shepherd v. Hunterdon Dev. Ctr.,* 174 N.J. 1, 803 A.2d 611 (2002) does not change the analysis. There, the N.J. Supreme Court explained that constructive discharge requires "conduct that is so intolerable that a reasonable person would be forced to resign rather than continue to endure it." *Shepherd v. Hunterdon Dev. Ctr., supra,* 174 N.J. 1, 803 A.2d at 628. Here, however, constructive discharge has not been placed in issue, and the district judge's reliance on state law construing constructive discharge was error.

*Denkins v, State Operated Sch. Dist. of the City of Camden,* Civ. No. 16-653-JBS-AMD, 2016 WL 6683541, at *8 (D.N.J. Nov. 14, 2016), *aff'd* 715 F. App'x 121 (3d Cir. 2017), does not change the analysis. There, the district judge reasoned that the resignations of four principals and vice principals were not involuntarily extracted for due process purposes. Here, however, infringement on a due process right resulting in the extraction of involuntary resignations has not been placed in issue.

## II. GOODE SATISFIED THE PRIVATE CITIZEN COMMENTING ON A MATTER OF PUBLIC CONCERN ELEMENT OF A CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION AGAINST GEHRING, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR

Whether a public employee's speech addresses a matter of public concern is determined "by reference to the speech's content, form, and context." *De Ritis v. McGarrigle, supra,* 861 F.3d at 455; *see, Dougherty v. School Dist. of Philadelphia,* 772 F.3d 979, 993 (3d Cir. 2014) (speech purporting to expose the malfeasance of a government official was speech addressing a matter of public concern).  A court is not foreclosed from concluding that an overall body of work addresses a matter of public concern.  *See, e.g., Munroe v. Central Bucks School District,* 805 F.3d 454, 470 (3d Cir. 2015) (employee's blog posts satisfied the public concern requirement where, "there were, at the very least, occasional blog posts that touched on broader issues like academic integrity, honor, and the importance of hard work").

Here, the district judge erred by considering the term "biased" in isolation, rather than looking at the term "biased" in context.  In her Petition of Appeal against Miles and Gehring, Goode said as to Gehring she willfully, knowingly, purposefully gave me unfair partially effective and ineffective observations that

contain misleading, erroneous, opinionated and untrue facts, and the observations were biased. (A119). Seen in context, the term "bias" appears in a lengthier complaint that classroom observations of her by Gehring (a public official), used as a basis for performance ratings, were not only biased, but misleading, erroneous, opinionated, unfair, and contained untrue facts. Taken in context, the Petition describes biased acts as well as other acts of malfeasance by a public official which are matters of public concern under *Dougherty*.

1. **THE GRANTING OF QUALIFIED IMMUNITY FOR GEHRING'S CONDUCT SHOULD NOT OCCUR**

In *City of Escondido v. Emmons,* 139 S.Ct. 500, 503 (2019), and before that in *White v. Pauly,* 137 S.Ct. 548, 552 (2017), the Supreme Court warned against defining a clearly established right "at a high level of generality." *See, James v. New Jersey State Police,* 957 F.3d 165, 170 n. 5 (3d Cir. 2020) (finding that the right to be protected under the Fourth Amendment against officers' use of deadly force was clearly established only when a serious threat of immediate harm to others was lacking).

The Supreme Court's Fourth Amendment jurisprudence on qualified immunity must be reconciled with *Taylor v. Riojas,* 141 S.Ct. 52 (2020) (*per curiam*). There, defining an inmate's clearly established right under the Eighth

Amendment when it came to conditions of confinement, the Court held that no reasonable officer could be cognizable of such deplorably unsanitary conditions of confinement for such an extended period of time and be deliberately indifferent. *Taylor v. Riojas, supra,* 141 S.Ct. at 53-54 (citing *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)).

The Third Circuit analyzed the clearly established nature of the right of a person who engages in First Amendment expression to not be retaliated against in *McGreevy v. Stroup,* 413 F.3d 359, 366-67 (3d Cir. 2005). There, relying on decisions from other Circuits, the Third Circuit held, in a case of alleged retaliation for First Amendment expression, that "where the [*Pickering* [*Pickering v. Board of Education,* 391 U.S. 563 (1968)]] balancing factors weigh heavily in favor of the employee, the law is clearly established, and qualified immunity is therefore unavailable." *McGreevy v. Stroup, supra,* 413 F.3d at 366. *McGreevy* thus defined the right with a high level of generality. Although *McGreevy* relied on decisions from other Circuits, it could have just as easily relied on *Rankin v. McPherson,* 483 U.S. 378, 383 (1987) ("[i]t is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech"), defining the right with a high level of generality.

8

In sum, Third Circuit jurisprudence defines the clearly established right of public employees, who speak as private citizens on matters of public concern, to not be retaliated against, with a high level of generality. *See, Starnes v. Butler Cty. Court of Common Pleas, 50th Judicial Dist.,* 971 F.3d 416, 429 (3d Cir. 2020) (citing *Wilkie v. Robins,* 551 U.S. 537, 555 (2007)) (citing *Rankin v. McPherson, supra,* 483 U.S. at 383); *Dougherty v. School Dist. of Philadelphia, supra,* 772 F.3d at 993. Gehring does not succeed in showing that the Third Circuit is bound by recent Supreme Court precedent to change course here.

## III. GOODE SATISFIED THE WHISTLE-BLOWING ELEMENT OF A *PRIMA FACIE* CASE UNDER CEPA AGAINST GEHRING, AND FOR THE DISTRICT JUDGE TO HOLD OTHERWISE WAS ERROR

Here, the statutory sections under which Goode asserts whistle-blowing are N.J.S.A. 34:19-3a(2) and N.J.S.A. 34:19-3c(2), and also N.J.S.A. 34:19-3a(1) and N.J.S.A. 34:19-3c(1).

The lack of recent authority from the Supreme Court on whether a claim such as Goode asserts must also involve a matter of public concern forces a federal appeals court to look to older cases from the Supreme Court for guidance. Although it is not a model of clarity, a case more than twenty years old from the

Supreme Court supplies the necessary guidance, *Estate of Roach v. TRW, Inc.,* 164 N.J. 598, 754 A.2d 544 (2000).

In *Estate of Roach,* the Appellate Division of the Superior Court set aside a jury verdict for plaintiff, on the grounds that CEPA did not extend protection to employees' complaints about co-employees' actions, brought under N.J.S.A. 34:19-3a, N.J.S.A. 34:19-3c(1) and N.J.S.A. 34:19-3c(2), absent some showing that those co-employees' actions "*implicate[d] the public interest.*" *Estate of Roach v. TRW, Inc., supra,* 164 N.J. 598, 754 A.2d at 549 (emphasis added). The Supreme Court said "[i]n essence, the Appellate Division held that *all* CEPA violations require a specific showing that the complained-about activities *implicate the public interest,*" but it disagreed. *Estate of Roach v. TRW, Inc., supra,* 164 N.J. 598, 754 A.2d at 549 (emphasis added).

*Estate of Roach* squarely held that CEPA claims based on fraud, criminal activity, or illegal acts need not involve activity which implicate the public interest. This square holding in itself is dispositive of the issue brought on this appeal.

The Court explained, "[t]hus, we would pervert the legislative intent if we required employees to prove the [N.J.S.A. 34:19-3c(3)] elements, or to establish some other violation of 'public policy,' when asserting claims under the other

10

sections of the statute [N.J.S.A. 34:19-3a(1), N.J.S.A. 34:19-3c(1), N.J.S.A. 34:19-3a(2) and N.J.S.A. 34:19-3c(2)]. *Estate of Roach v. TRW, Inc., supra,* 164 N.J. 598, 754 A.2d at 551.

Gehring misreads *Estate of Roach.* There, at trial, "plaintiff asserted that he reasonably believed that he had disclosed activities that were unlawful pursuant to N.J.S.A. 34:19-3a ('section 3a') and N.J.S.A. 34:19-3c(1) ('section 3c(1)'), were fraudulent or criminal pursuant to N.J.S.A. 34:19-3c(2) ('section 3c(2)'), or were incompatible with public policy pursuant to N.J.S.A. 34:19-3c(3) ('section 3c(3)'). The jury found for plaintiff under sections 3c(1) and 3c(2), but not under section 3c(3)." *Estate of Roach v. TRW, Inc., supra,* 164 N.J. 598, 754 A.2d at 549. The issue before the Supreme Court was whether the jury's specific fact finding concerning section 3c(3), that his employer's activities were not incompatible with a clear mandate of public policy, barred Roach's verdict under sections 3a, 3c(1), and 3c(2), and the Court held that it did not. *Estate of Roach v. TRW, Inc.,* 164 N.J. 598, 754 A.2d at 549.

*Mehlman v. Mobil Oil Corp.,* 153 N.J. 163, 707 A.2d 1000 (1998) does not change the analysis. There, the Supreme Court considered the issue "whether Mehlman satisfied his burden of proof [at trial] on the question of whether the sale

11

in September 1989 by Mobil in Japan of gasoline with five percent or more benzene was 'incompatible with a clear mandate of public policy concerning the public health, safety or welfare.' N.J.S.A. 34:19-3c(3)." *Mehlman v. Mobil Oil Corp., supra,* 153 N.J. at 172-73, 707 A.2d 1000. *Mehlman,* which preceded *Estate of Roach,* only addressed Section 3c(3) claims, and did not consider the issues adjudicated by the Supreme Court in *Estate of Roach.*

*Maw v. Advanced Clinical Communications, Inc.,* 179 N.J. 439, 846 A.2d 604 (2004) does not change the analysis. There, the Supreme Court considered the issue of "the contours and scope of a 'clear mandate [of public policy]' sufficient to assert a claim under Section 3c(3)." *Maw v. Advanced Clinical Communications, Inc., supra,* 179 N.J. 439, 846 A.2d at 607. Here, however, Section 3c(3) claims have not been placed in issue, and the district judge's reliance on state law construing Section 3c(3) claims was error.

Moreover, the Supreme Court's reaffirmation in *Maw* of "the limiting principle….that the complained of activity must have public ramifications, and that the dispute between employer and employee must be more than a private disagreement," *Maw v. Advanced Clinical Communications, Inc., supra,* 179 N.J. 439, 846 A.2d at 608, cited *Mehlman v. Mobil Oil Corp., supra,* 153 N.J. at 188,

12

707 A.2d at 1013. *Mehlman*, as noted *supra,* was a pre-*Estate of Roach* case which addressed Section 3c(3) claims, rather than the issues addressed in *Estate of Roach*. *Maw* has no bearing on the analysis here.

*Beasely v. Passaic County,* 377 N.J. Super. 585, 873 A.2d 673 (App. Div. 2005) does not change the analysis. There, the Court analyzed the sufficiency of a CEPA adverse employment action. *Beasely v. Passaic County, supra,* 377 N.J. Super. 585, 873 A.2d at 684-85. Here, however, CEPA adverse employment action has not been placed in issue. *Beasely* has no bearing on the analysis here.

The other ground upon which the district judge struck down Goode's CEPA whistleblowing was that it was vague and conclusory.

In contrast to the vague and conclusory anonymous letter to HR in *Battaglia v. United Parcel Serv., Inc.,* 214 N.J. 518, 70 A.3d 602 (2013), Goode, in her Petition of Appeal of August 21, 2014 against Miles and Gehring, said as to Gehring she willfully, knowingly, purposefully gave me unfair partially effective and ineffective observations that contain misleading, erroneous, opinionated and untrue facts, and the observations were biased. (A119).

Gehring contends that the term "biased" should be looked at by the Court in isolation, but the term "biased" must be seen in context. Here, it is complained of

13

that classroom observations of her by Gehring (a public official), used as a basis for performance ratings, were not only biased, but misleading, erroneous, opinionated, unfair, and contained untrue facts. Official misconduct is criminal activity under New Jersey law, N.J.S.A. 2C:30-2, so Goode was describing acts which she reasonably believed were fraudulent or criminal, CEPA Section 3a(2) and CEPA Section 3c(2). Acts violative of the public trust by a State employee are proscribed under New Jersey law, N.J.S.A. 52:13D-23(e)(7), so Goode was describing acts which she reasonably believed were illegal, CEPA Section 3a(1) and CEPA Section 3c(1). Further, as the party opposing summary judgment, Goode was entitled to not have the district judge credit the District's contention that her use of the term "biased" did not refer to discrimination.

A careful review of Goode's complaints in context reveals that they were whistle-blowing about particular acts by a public official, rather than a vague and conclusory accusation.

## **CONCLUSION**

Grounds have been shown for reversal of the district judge on all issues.

Respectfully submitted,

s/ Peter Kober
Peter Kober, Esq.

14

Attorney Identification Number 006481979

Kober Law Firm, LLC

1864 Route 70 East, Cherry Hill, NJ 08003

856-761-5090

DATED: April 20, 2023

## COMBINED CERTIFICATIONS

I, Peter Kober, Esq., certify as follows:

1. The text of the electronic brief is identical to the text in the paper copies.

2. A virus check has been run on the file and no virus was detected. The version of the virus protection program used was SecurityEdge.

3. This brief and appendix were served on Walter Kawalec, Esq., of the firm of Marshall, Dennehey, Warner, Coleman & Goggin, wfkawalec@mdwcg.com, via electronic filing by the Notice of Docket Activity on or before April 20, 2023. Mr. Kawalec is known by the undersigned to be a Filing User.

4. Pursuant to 28 U.S.C. Section 1746, I certify under penalty of perjury that the foregoing is true and correct.

s/Peter Kober

Peter Kober, Esq.

DATED: April 20, 2023